**STATE v. ABBOTT LOAN SERVICE et al.**

No. 11779.

Court of Civil Appeals of Texas. Galveston.
June 6, 1946.

Rehearing Denied June 27, 1946.

Grover Sellers, Atty. Gen., Carlos C. Ashley, 1st Asst. Atty. Gen., Harris Toler, Robert O. Koch, and Ocie Speer, Asst. Attys. Gen., A. C. Winborn, Dist. Atty. of Harris County, and Robert R. Casey, Asst. Dist. Atty., both of Houston, and Brandon Bickett, of San Antonio, for appellant.

Ladin, Lieberman & Boarnet, William E. Ladin, Seymour Lieberman, and Irvin H. Boarnet, all of Houston, for appellees.

Jack W. Knight, of Houston, for amicus curiae Better Business Bureau of Houston.

MONTEITH, Chief Justice.

This is an appeal from a judgment of the district court of Harris County refusing an application of the State of Texas, acting through its Attorney General and the District Attorney of Harris County, for an injunction under the provisions of Article 4646b, Vernon's Annotated Civil Statutes,

permanently restraining and enjoining J. S. Bussell, individually and doing business as Abbott Loan Service and Capitol Loan Service, who were alleged to have been engaged in the business of habitually lending money at usurious rates of interest, their officers, agents, and employees from engaging in such a business, and for the appointment of a receiver.

In their answer appellees alleged that in the transactions complained of by the State they were acting solely as loan brokers and that their duties and powers as such extended only to the obtaining of lenders for the borrowers for whom they were acting. They alleged that the fees and compensations charged by them to borrowers were fees for brokerage services. For the purpose of proving these facts, appellees offered in evidence on the cross-examination of the State's witnesses certain instruments executed by the borrowers.

By supplemental petition the State alleged that the contracts and other instruments relied upon by appellees were not bona fide brokerage contracts, but that they constituted fraud, subterfuge and evasion and did not reflect the real facts with respect to such matters.

The two suits involved in this appeal are identical save as to the parties defendant and the evidence incidental to each. By agreement of all parties the suits were consolidated for the purpose of trial.

At the close of the State's evidence, the court granted appellees' motion for an instructed verdict, and, upon the verdict thus returned, rendered its final judgment against the State and in favor of the defendants.

Article 4646b of Vernon's Revised Civil Statutes, under which these suits were brought, became effective on August 10, 1943. The parts of the act pertinent to this appeal provide that:

"The State of Texas through its Attorney General, or any District or County Attorney, may institute a suit in the District Court to enjoin any person, firm, or corporation or any officer, agent, servant or employee of such person, firm .or corporation, who is engaged in the business of habitually loaning money for the use and detention of which usurious interest has been charged against or contracted to be paid by the borrower, from demanding, receiving or by the use of any means attempting to collect from the borrower usurious interest on account of any such loan, or from thereafter charging any borrower usurious interest, or contracting for any usurious interest. * * *

"Sec. 2. By the term 'habitually' as used in this Act, is meant the making of as many as three (3) loans on which or in connection with which usurious interest is charged or contracted for within a period of six (6) months next preceding the filing of any such suit.

"By the term 'usurious interest' as used in this Act is meant interest at a rate in excess of ten (10%) per cent per annum.

*    *    *    *    *    *

"In the trial of any application for injunction under this Act there shall exist a prima facie presumption that the actual and necessary expenses of making any such loan was One ($1.00) Dollar for each Fifty ($50.00) Dollars, or fractional part thereof loaned  *  *  *."

In the case of Watts v. Mann, 187 S.W. 2d 917, writ of error refused, the Austin Court of Civil Appeals, speaking through Chief Justice McClendon, in its opinion held that under said Article 4646b The State of Texas is authorized to bring an action to permanently enjoin a money lender, his agents or employees, who are engaged in the business of habitually lending money for the use of which usurious interest is charged or contracted to be paid by the borrower, and that the making of three loans within a six months period at usurious rates of interest was sufficient under said act to constitute the lender an "habitual lender" under said article, as distinguished from a mere casual lender, and to authorize the issuance of an injunction permanently enjoining him from engaging in such business.

The court further held that, in suits brought by money lenders to enjoin the enforcement of the Loan Act, evidence that a lender had charged a borrower more than $1 for a loan of $50 or a fraction thereof as compensation for procuring a

loan met the burden cast on the State of showing that such charge was not bona fide service charge, but a cloak for charge of usurious interest, and that it cast the burden on the lender to show that the charge was a service charge in fact and that it was reasonable.

It is undisputed that more than three loans were made by each of the defendants involved in this appeal during a six months period and that the charges made by appellees to the lenders for making each loan were in excess of ten (10%) per cent per annum on the amount of the loan. The State introduced in evidence certified copies of the assumed name records of Harris County showing that J. S. Bussell, of San Francisco, California, a defendant in both suits, was the sole owner of Abbott Loan Service and Capitol Loan Service, the two companies sought to be enjoined, during the time pertinent to this suit and numerous witnesses testified that they had procured loans from one or the other of said loan companies. Each witness testified that when he applied for the loan he was told by the person in charge of the office that the loan would be made to him in the amount required. In each instance the applicant was required to sign an instrument appointing the loan company his agent and attorney in fact for the purpose of procuring the loan for him, which provided that "in consideration of services rendered and to be rendered" the borrower would pay the loan company certain sums, the aggregate of which was in excess of ten per cent per annum interest on the sum borrowed, as brokerage charges. The borrowers in each instance were told by the representatives of the loan companies that the money loaned was not the money of the company. When the loan was procured the borrowers were required to sign notes in favor of Mrs. Goldie Durham or Irene McManus which provided for interest at the rate of ten per cent per annum for the amount of the loan and the alleged brokerage charges. Borrowers were also required to sign a draft on either Mrs. Goldie Durham of Irene McManus for the amount shown in the note. In each instance the applicant received the amount of the requested loan immediately less a small sum which was designated as interest.

The record, including the contracts, applications for loans, powers of attorney and other instruments, all of which were prepared by appellees and support their defenses, were circumstances from which the jury might determine whether the transactions were bona fide and free from the taint of usury. There is no direct testimony of any witness in the record that the instruments relied upon by defendants were not brokerage contracts.

Under applicable points of appeal the State assigns error in the action of the trial court in excluding "fact matters expressly admitted by defendant Bussell" in answer to requests made by the State for admission under Rule 169, Texas Rules of Civil Procedure, and to the action of the trial court in excluding "judicially admitted facts" answered by appellees to the request for admissions by the State in accordance with said Rule 169.

The excluded fact matters included admissions by the defendant Bussell that he had been engaged in the small loan business prior to August 10, 1943, the effective date of the Usury Injunction Act, during which time he had made direct loans to his customers; that his organization comprised not only himself as owner, but likewise employees, including a manager, a stenographer, bookkeeper, and other necessary employees; that his overhead expenses such as office rent, salaries, printing, telephones, stamps, and other necessary supplies averaged in excess of $300 per month; that the business operated at a financial profit during the time involved in this suit and that he was solvent at all times.

The admissions, the exclusion of which are complained of, included a request for an admission that on December 2, 1944, Bussell had negotiated a loan with Mrs. Ruth Vincent Mahon in which she had obtained the sum of $50 and had given her obligation to pay the sum of $71.20 in installments of $8.90 each. The reply which was sought to be introduced was: "He states that he cannot truthfully either admit or deny the matters set forth in paragraph 36 of said request, without qualifications, but states that

various people named in said paragraphs were his brokerage clients, and that the several sums mentioned in said paragraphs are substantially correct."

Points 10 to 15, inclusive, sought admissions in reference to six other loans made by appellees and the details in connection therewith.

■ While it is the settled law in this state that an agent or a broker may lawfully charge a commission for his services in negotiating a loan with a third party and that, where the commission is charged in good faith and is not made as a cloak to avoid the usury law, such commission will not be taken into consideration in determining whether or not the loan is usurious, it must appear that the extra charge was made in good faith for so negotiating the loan and such a charge may not be made where the party charging the commission is merely lending his own money. Greever v. Persky, 140 Tex. 64, 165 S.W.2d 709.

■ It is a well established rule in this state that, in usury cases as in other cases involving fraud, subterfuge and evasion of the law, that the law is liberal in allowing inquiry into the real truth of the transactions involved since the best evidence of the transaction is in the exclusive possession of the accused and not readily available to the complaining party. This rule was announced in the early case of Peightal v. Cotton States Building Company. 25 Tex.Civ. App. 390, 61 S.W. 428, 431 in which it is held that where "there is doubt as to whether the transaction is a cover for usury, or a perfectly fair one authorized by law, then it is a question for the jury to determine, from all the facts and circumstances of the case, whether the transaction disclosed is bona fide in the ordinary course of business, free from the taint of usury, or whether it was a mere cloak and devise, under the form of an ordinary business transaction, to obtain more than legal interest. * * *" Continuing, the court held "that any evidence surrounding and so connected with a transaction as will throw light upon it, and disclose, or tend reasonably to show, its true character, is admissible upon the issue of usury, although the contract is in writing, and appears upon its face fair and legal."

The necessity for looking through the form for the substance of a transaction was upheld by the Supreme Court of the United States in the early case of Scott v. Lloyd, 34 U.S. 418, 9 Pet. 418, 9 L.Ed. 178, in which the Court, speaking through Chief Justice John Marshal, said:

"The ingenuity of lenders has devised many contrivances by which, under forms sanctioned by law, the statute may be evaded. * * * Yet it is apparent that, if giving this form to the contract will afford a cover which conceals it from judicial investigation, the statute will become a dead letter. Courts, therefore, perceived the necessity of disregarding the form and examining the real nature of the transaction."

The above rule was approved and followed by this court in the case of Commercial Securities Co. v. Rea, 78 S.W.2d 707, affirmed 130 Tex. 11, 105 S.W.2d 872, and in the recent case of Griffith v. Godberry, Tex.Civ.App., 182 S.W.2d 739.

■ Since this is an appeal from a judgment rendered on an instructed verdict, the controlling issue presented is whether there is any evidence in the record which, when considered by itself, would, if accepted as true by the jury, raise an issue of fact in favor of the State.

It has been uniformly held by the courts of this state that, as against an instructed verdict, the testimony of the party against whom such judgment is rendered shall be taken as true and that he shall be given the benefit of all fact evidence, circumstantial and otherwise, bearing on his cause of action, as well as all reasonable inferences arising from the evidence.

In announcing the foregoing rule the court, in the case of Bragg v. Houston Electric Co., Tex.Civ.App., 264 S.W. 245, 251, quoting with approval from the opinion of the Supreme Court of Ohio in the case of Hickman v. Ohio State Life Insurance Company, 92 Ohio St. 87, 110 N.E. 542, in its opinion held that: "Where there is no dispute or conflict in the testimony of different witnesses, but nevertheless the unconflicting testimony discloses a variety of circumstances from which different minds may reasonably arrive at different

conclusions as to the ultimate facts shown by such evidence, then it is the duty of the jury to determine such ultimate fact, even though the trial judge should himself be convinced as to what the conclusion should be."

In the case of Needham v. American National Insurance Co., Tex.Civ.App., 97 S. W.2d 1016, 1020, it was held that: "While appellee offered sufficient evidence to raise jury issues on the questions raised by its pleadings, this being an appeal on peremptory instruction against appellant, we shall not review appellee's evidence, for, under the disposition of the case against the plaintiff on peremptory instructions, appellant's evidence must be taken as true, *and every reasonable inference arising from such evidence must be indulged in favor of appellant, notwithstanding all such evidence may have been contradicted by substantial evidence offered by appellee, and a contrary reasonable inference could have been indulged.*" (Emphasis ours.)

In the case of Lockley v. Page, 142 Tex. 594, 180 S.W.2d 616, 618, it was held that, "It was the jury's province to weigh all of the evidence and to decide what credence should be given to the whole or any part of the testimony of each witness. 'The jury were the judges not only of the facts proved, but of the inferences to be drawn therefrom, provided such inferences were not unreasonable.' "

█ Under this record the State, we think, has discharged its burden by offering undisputed evidence that more than three loans had been made by each of the defendant companies herein during a six months period, by proof that the charges made to lenders on each loan were far in excess of ten per cent per annum of the amount of the loan made, by the introduction in evidence of facts from the testimony of witnesses and by circumstantial evidence of probative force from which inferences might be drawn that the claimed brokerage charges made to borrowers were not made in good faith but that they were made for the purpose of avoiding the usury law.

█ Further, we think that the trial court was in error in excluding from the jury the fact items requested by the appellant to be either admitted or denied under Rule 169, Texas Rules of Civil Procedure, including admissions by appellee Bussell that he had been engaged in the small loan business prior to the effective date of the Usury Injunction Act, during which time he had made direct loans to his customers, the fact that during the time pertinent to the appeal he had maintained a comparatively large office force with an overhead expense of from $300 to $500 per month, and that his businesses were operated at a financial profit and that he was solvent. These facts were, we think, circumstances of probative value from which the jury might reasonably have inferred that Bussell had continued in the small loan business operated by him prior to the enactment of the Usury Injunction Act and that in the transactions testified to he had not acted as a broker and had made loans at usurious interest to his customers. The fact that Bussell was solvent and was able to maintain a comparatively large office force were circumstances of probative value from which the jury might reasonably infer that he was using his own money in making loans at usurious rates of interest, and rebut evidence or inferences that he was merely acting as a broker to secure lenders of money for his customers.

It follows from above conclusions that the judgment of the trial court must be reversed and the cause remanded for a new trial.

Reversed and remanded.