WILSON FINANCE COMPANY et al.,
Appellants,

v.

STATE of Texas, Appellee.

No. 10818.

Court of Civil Appeals of Texas.

Austin.

Dec. 7, 1960.

Rehearing Denied Jan. 4, 1961.

J. C. Hinsley, Austin, for L. B. Dean and J. A. Scritchfield.

Head & Lyle, Gerald D. James, Corpus Christi, for L. C. Smith.

Will Wilson, Atty. Gen., Henry G. Braswell, John C. Steinberger, Asst. Attys. Gen., for appellee.

GRAY, Justice.

The State of Texas, by and through the Attorney General acting under Art. 4646b, Vernon's Ann.Civ.St., brought this suit against L. B. Dean individually and doing business as Wilson Finance Company; J. A. Scritchfield; and L. C. Smith individually and doing business as L. C. Smith Company. The State's original petition was filed July 25, 1958 and named additional parties as defendants however by its third amended original petition, upon which the trial was had, the State omitted said additional parties and the above named were the sole defendants.

The State alleged that the defendants were engaged in the business of habitually loaning money and charging usurious interest therefor. It prayed for a permanent injunction restraining the defendants, severally and collectively, from receiving collecting, attempting to collect or charging usurious interest on any loan.

Among other things the State alleged:

" * * * all of the Defendants herein being engaged in a joint adventure, scheme, conspiracy and subterfuge wherein all of said Defendants, acting in concert and conspiracy, habitually make loans and contract and charge usurious interest thereon in violation of Articles 4646b, 5069 and 5071, Vernon's Texas Civil Statutes, and Section 11 of Article III of the Texas Constitution. Under such joint adventure, scheme, conspiracy and subterfuge by and between L. C. Smith and the other Defendants herein, the said other Defendants are not bona fide loan brokers acting as the agent of borrowers, but said other Defendants, acting in concert and conspiracy with L. C. Smith, are instead merely lenders of money to borrowers and charging

and contracting for usurious interest on said loans. Each of the Defendants is threatening to continue such unlawful practice, and will do so unless restrained and enjoined by appropriate orders of this Court."

L. B. Dean is the owner of Wilson Finance Company which is domiciled and does business in Austin, in Travis County. J. A. Scritchfield is an employee and is general manager of Wilson Finance Company. L. C. Smith is the owner of L. C. Smith Company domiciled and doing business in Corpus Christi, in Nueces County. L. B. Dean owns no part of L. C. Smith Company and L. C. Smith owns no part of Wilson Finance Company.

Except when otherwise stated L. B. Dean, Wilson Finance Company and J. A. Scritchfield will be later referred to as Wilson. L. C. Smith Company and L. C. Smith will be referred to as Smith.

The record before us consists of two volumes in the transcript, two volumes in the statement of facts and one volume of exhibits. The briefs of the parties total 418 pages. This statement is sufficient to show that it is here necessary to omit conflicts in the evidence, much of the argument advanced and, in considering the thirty-seven points (Wilson 33. and Smith 4) to limit our consideration to the points, the legitimate evidence supporting the jury findings and the applicable law.

Applicants for loans apply to Wilson for such loans, it makes an investigation of the applicant and if it is satisfied that such applicant is a reasonably good credit risk then Wilson has the applicant sign forms which Smith has had printed in Corpus Christi and which have been approved by an attorney there. These forms are on a single sheet of paper but separated by perforations and are: (1) a "Brokerage Contract" wherein Wilson is named as a broker and is appointed agent and attorney in fact to negotiate a loan for a stated amount for which the borrower agrees to pay a fee which fee also covers a charge for guaran-

teeing the payment of the loan. This fee is taken from a previously prepared schedule and varies with the amount of the loan and the time for which it is made. This fee exceeds the amount interest at 10 per cent per annum on the loan would be. (2) A note payable to bearer for the amount of the loan and bearing interest at 10 per cent per annum. (3) A draft drawn by the borrower on Smith and payable to bearer. The draft is endorsed by the borrower and the three instruments are delivered to Wilson and it pays the amount of the loan to the borrower. In due time Wilson forwards to Smith: the note which it has endorsed, the draft, a report or loan letter showing the amount and period of the loan, the name of the borrower together with the amount of the charges made by Wilson, and a check drawn on Wilson for the amount of the loan and payable to L. C. Smith Reserve Account. Upon receipt of the foregoing Smith forwards its check to Wilson for the amount of the loan.

Smith invests the funds in the above mentioned Reserve Account in United States Ninety day Treasury Bills which in time are pledged to banks as security for loans and the money thus obtained by Smith is loaned at interest.

The above mentioned "Brokerage Contract" gives the borrower the option to make payments on the note "direct to the lender" and notify the guarantor of the note of such payments or to leave such payments at Wilson's office to be transmitted by Wilson to the holder of the note. Each time the borrower makes a payment to Wilson it forwards the same to Smith and that company forwards Wilson a check drawn on the Reserve Account for the amount of the payment.

Wilson has been doing business with Smith for more than six months next preceding the filing of the suit and during that time no person other than Smith has received borrower's notes from Wilson.

An agent or representative of Smith solicited Wilson to do business with Smith,

all loans made by Wilson were handled according to a system of procedure required by Smith and all loans were made according to the same method of procedure.

There is evidence that numerous loans were made by Wilson and handled by Smith. There is however stressed here three loans made June 21, 1958. These are: a loan to Sammie Lee Blakemore for $50 for three months for which she agreed to pay $22.80 a month or a total of $68.40; a loan to Angelito Ramirez for $25, and a loan to Leonard Reyes for $20.

There can be no question but that if the charges made by Wilson are interest then the loans are usurious and we omit further details of such charges.

Sammie Lee Blakemore testified in person as to the loan to her, and the loans to Ramirez and Reyes were identified and testified to by an office employee of Wilson.

There was in evidence two pictures of the front of Wilson's office. These show on the plate glass at the front "Wilson Finance Company. Personal Loans," and on the door "Member Texas Association of Small Loan Companies."

A jury trial was had and in answer to special issues the jury found: (1) that Wilson and Smith, during the six months next preceding the filing of the suit, acted in conspiracy to habitually loan money and charge usurious interest therefor. There was no issue 2 and by issues 3, 4 and 5 respectively the jury found that: L. C. Smith individually and doing business as L. C. Smith Company; L. B. Dean individually and doing business as Wilson Finance Company, and J. A. Scritchfield are engaged in Travis County in the business of habitually loaning money and charging usurious interest therefor; by 6 and 7 respectively that L. B. Dean doing business as Wilson Finance Company and J. A. Scritchfield were not engaged as brokers in securing loans for borrowers, and were not acting as agents for borrowers in securing loans from lenders; by 8, 9, 10, 11, 12 and 13 that

on June 21, 1958 Sammie Lee Blakemore, Leonard Reyes and Angelito Ramirez received a loan at Wilson Finance Company; that in making the loans L. B. Dean, doing business as Wilson Finance Company, and J. A. Scritchfield did not act as brokers in securing said loan; by 14, 15, 16, 17, 18 and 19 that L. C. Smith, individually and doing business as L. C. Smith Company, made a loan to Sammie Lee Blakemore, to Leonard Reyes, and to Angelito Ramirez and charged or contracted for interest at a rate in excess of 10 per cent per annum; by 20, 21 and 22 that L. C. Smith individually and doing business as L. C. Smith Company, L. B. Dean, individually and doing business as Wilson Finance Company and J. A. Scritchfield, on or about June 21, 1958, acted in conspiracy to make a loan: to Sammie Lee Blakemore for $50; to Leonard Reyes for $20, and to Angelito Ramirez for $25 on which loans the borrower was charged or contracted to pay interest in excess of 10 per cent per annum.

In his charge to the jury the trial court, among other things, defined the term conspiracy as used in the charge. He instructed the jury that findings on the issues submitted may be established by direct evidence, or by circumstantial evidence, or by both, and further instructed the jury as to when a fact may be established by circumstantial evidence.

Wilson's first point complains that the trial court erred in overruling its motion for continuance bottomed on the sickness and absence of J. A. Scritchfield. The motion appears to be a first motion and alleges that the testimony of Scritchfield is material for the reason that he is the manager of Wilson's business, is the only person having complete knowledge of the operation of the business during the time involved in the suit and that he

"* * * is the only person who can testify fully for defendants as to the facts involved in the affirmative defenses listed in their answer and more particularly as to the fact alleged and

set out in paragraph XXVIII of Second Amended Original Answer of Defendants on file herein; * * * that the testimony said witness would give if present cannot be obtained from any other source because of the peculiar knowledge of the businesses involved in this suit which such witness has; * * *"

The motion does not meet the requirements of Rule 252, Texas Rules of Civil Procedure. The motion does not state what is expected to be proved by the witness. It states only that Scritchfield "can testify" not that he "would testify" to any material facts, and states that "the testimony said witness would give if present cannot be obtained from any other source." It does not say what testimony the witness would give, how it is material or that it is admissible. The referred to answer and paragraph XXVIII thereof is neither attached to the motion or adopted and an examination thereof is not even requested. We think the trial court was not called on to make an independent examination of the answer to speculate as to the materiality and admissibility of evidence that might be relevant to the alleged affirmative defenses. The allegations of the motion were not sufficient to enable the trial court to determine the materiality of the absent witnesses' testimony, nor to permit the opposing party to admit its truth and thereby prevent a delay of the trial. Sanders v. Kansas City Life Ins. Co., Tex.Civ.App., 152 S.W.2d 506, Er. ref. There are no specific allegations advising the court of the relevancy of the absent testimony. Davis v. National Acceptance Co., Tex.Civ. App., 233 S.W.2d 321, Er. ref., N.R.E.

Wilson's points 2, 3 and 4 and Smith's points 1, 2 and 3 are to the effect that the trial court erred in overruling their motions: for an instructed verdict, for judgment non obstante veredicto, and to disregard jury findings.

Wilson's motion for instructed verdict is to the effect that there is no evidence:

(1) that either of the defendants made any loan on which interest in excess of 10 per cent per annum was charged or contracted for; (2) that Wilson has charged or contracted for usurious interest on three loans within six months next preceding the filing of this suit, and (3) that Wilson has entered into any conspiracy or agreement with any other defendant to evade the law against usury. Smith's motion urged the trial court to instruct a verdict for Smith for substantially the same reasons set out in paragraphs one and two of Wilson's motion.

The motions for judgment non obstante verdicto allege jury findings are not supported by the evidence. Wilson's point 4 and Smith's point 3 assert that the jury's answer to issues 1, and 6 to 21 are not supported by the evidence.

Accepting the evidence supra and especially the admissions that Smith solicited Wilson to do business with Smith; that loans were handled as above outlined which was in accordance with a system and procedure required by Smith; that forms were furnished by Smith to Wilson which forms were used for the making of loans, and the fact that during the six months period preceding the filing of the suit all loans made by Wilson were handled by Smith is evidence that Wilson and Smith acted by agreement in making loans.

Smith's contention that it was acting independently of Wilson in the loan transactions is overcome. Wilson's contention that it was acting as a broker and agent of the borrower in obtaining loans for the borrower is overcome by jury findings. These findings are supported by the evidence supra and the fact that Wilson paid the amount of the loan to the borrower upon approval of the loan by Wilson and then charged the borrower a fee far in excess of interest at the rate of 10 per cent per annum. The relation of debtor and creditor then existed between Wilson and the borrower and "whatever trouble or hazard is incurred by him (Wilson) in

securing the money from a third party in order to enable him to make the loan is in contemplation of the law fully compensated for by the payment of the lawful rate of interest." Greever v. Persky, 140 Tex. 64, 165 S.W.2d 709, 711. Wilson attempts to evade its status of creditor of the borrower by saying that its payment of the loan to the borrower is on condition that if it does not find a lender then the borrower may return the amount of the loan and Wilson will make no charge. When this contention is tested by "the real bona fide intention of the parties," upon which the trial court instructed the jury, we think it fails. The note executed by the borrower and delivered to Wilson makes no such provision. Wilson, by the sign on the front of its office, holds itself out as a finance company making personal loans. The borrower applies to Wilson for a loan, executes the above mentioned instruments and receives from Wilson the amount of the loan and by the note the borrower unconditionally obligates himself to pay to the "bearer" the amount of the note. This evidence together with the fact that all loans made by Wilson were handled by Smith and were made in accordance with a system of procedure required by Smith is "full, clear and satisfactory proof" that Wilson and Smith acted in conspiracy.

Wilson and Smith say there is no evidence of any agreement between them. We do not agree. The above proved and admitted facts and especially the facts that Wilson made loans in accordance with a system of procedure required by Smith and that Smith, during the time in question, accepted all loans made by Wilson justify and support the jury's conclusion that an agreement was made. Otherwise why would: Smith make requirements and furnish forms for loans; Wilson make all loans in accordance with such requirements and use the the forms so furnished and then forward the notes to Smith. These are circumstances arising from proved facts and together with the evidence supra support the jury's finding.

The charges made by Wilson, if interest, are admittedly usurious.

It is argued that the charges made by Wilson were brokerage fees. We recognize that a person may act as a broker in obtaining loans for borrowers and may also sell his credit as a guarantor of the loan, that he may lawfully charge the borrower for these services, and that when such charges are bona fide they are not interest. Donoghue v. State, Tex.Civ.App., 211 S.W. 2d 623, Er. ref., N.R.E. However the jury findings, supported by the evidence, are contrary to the contention.

■ Points 5, 12, 13 and 14 complain of the action of the trial court in admitting in evidence a loan made subsequent to the filing of the suit, transactions with parties not parties to the suit, and transactions and matters not alleged in the State's petition.

The State's petition alleged that Wilson and Smith were engaged in the business of habitually loaning money for the use and detention of which usurious interest was charged or contracted for and supra we have quoted some allegations. Neither Wilson nor Smith could have been misled as to the charge made against them or that their system of doing business was the subject of inquiry.

We think the evidence was admissible to show the system, scheme and plan of operating the business and certainly on the issue of the bona fide intention of the parties. Goree v. Uvalde Nat. Bank, Tex.Civ. App., 218 S.W. 620, 624, Er. dism.; McCormick & Ray, Texas Law of Evidence, 2d Ed. Sec. 1522.

■ Wilson's points 6, 7 and 8 complain of the admission in evidence of exhibits relating to loans to Leonard Reyes, Angelito Ramirez and Sammie Lee Blakemore, said exhibits being brokerage contracts and loan cards.

The witness Mercado, an office employee of Wilson, testified that loan cards were made up on each loan. The brokerage contracts signed by Leonard Reyes and by Angelito Ramirez were signed by this witness as broker and she testified that she would not have signed the same if she had not arranged the loan. Sammie Lee Blakemore testified that at the time she borrowed $50 from Wilson she signed a brokerage contract. L. B. Dean was asked if the brokerage contracts exhibited to him were the originals and he replied that all he could say was that they were brokerage contracts of the dates indicated on them and said they were taken from records in the office. The controversy as to the admission in evidence of the exhibits continued for some time and the trial court announced "These are the originals."

We hold that the execution and identity of the exhibits was properly proved so as to render them admissible, and that in any event, from the evidence of the witnesses Mercado, Dean and Blakemore, the trial court impliedly found that the exhibits were made in the regular course of the business of Wilson, that it was the regular course of business for an employee (Mercado) to make the loan cards and to fill out the brokerage contracts, and that all of the same were made at or near the time the loans were made. Art. 3737e, Vernon's Ann.Civ.St., McCormick & Ray, Texas Law of Evidence, 2d Ed., Sec. 1258.

■ Wilson's points 9 and 10 are to the effect that the trial court erred in refusing to strike the State's request for admissions to L. B. Dean and to J. A. Scritchfield, and in admitting the admissions in evidence.

The State addressed separate requests for admissions under Rule 169, Texas Rules of Civil Procedure, to L. B. Dean and to J. A. Scritchfield and requested that they be answered within fifteen days. There were 480 requests, of these some were admitted and the admissions were admitted in evidence to the jury. There were no motions made for an extension of

time on which to file sworn statements in answer to the requests. Prior to filing these statements the parties filed motions to strike the requests for the reasons:

"* * * that said requests are not attempts to obtain conscious admissions of uncontroverted matter, but are a multitudinous, complex group of mixed statements of law, conclusions, facts and half-truths obviously designed to entrap and confuse this defendant and which may not be simply answered without encountering the danger of answering half-truths, or two or more questions in one, or of giving answers that involve points of law or in general giving answers that were not intended, and which, by the mechanical presentation and form thereof demonstrate that they were not designed for use in this action but have been prepared by plaintiff's attorneys for use in a multitude of situations and suits, and which further appear to have been designed as much for the *harrasment* of this defendant by the consuming of enormous amounts of time in attempting to answer same as well as to secure admissions of uncontroverted facts."

Rule 169, supra, provides that for the purpose of the pending action only the party may admit, deny or state why he cannot safely admit or deny requests.

Some of the admissions were introduced in evidence by the State, others were called to the attention of L. B. Dean and he testified relative to the same. All of the requests were not offered in evidence by either of the parties. It thus appears that L. B. Dean was permitted to explain any statements in the admissions that he deemed harmful. Without setting out the requests and admissions we merely say that they related to the manner of conducting Wilson's business and the expense and profit thereof.

Harm to appellants is not shown. The rule itself affords parties protection by providing that they may admit, deny, or state why they cannot admit or deny requests for admissions. It would be improper if not impossible under the present rule to limit the number of requests, the subject matter thereof or to prescribe specific forms therefor. These are matters to be considered in determining the effect of admissions and their admissibility in evidence.

The trial court did not err in admitting the admissions in evidence. State v. Abbott Loan Service, Tex.Civ.App., 195 S.W. 2d 416, Er. ref., N.R.E.

■ Wilson's eleventh point complains that the trial court erred in refusing to suppress the deposition of L. B. Dean and J. A. Scritchfield. The ground for the motion is that the motion to take the depositions is signed by an assistant attorney general and not by the county or district attorney and therefore the notices were unauthorized. Citing Art. 5, Sec. 21, Texas Constitution, Vernon's Ann.St. This same contention was made and overruled in State v. Walker-Texas Investment Co. et al., Tex.Civ.App., 325 S.W.2d 209. In refusing a writ of error, N.R.E., the Supreme Court, in a per curiam opinion, Smith v. State, 328 S.W.2d 294, 295, said:

"Under the holding of this Court in Maud v. Terrell, 109 Tex. 97, 200 S.W. 375, it is clear that when the Legislature creates a new or additional cause of action in favor of the State it may also constitutionally authorize the Attorney General to prosecute such cause of action in both the trial and appellate courts of the State."

■ Points 15 and 24 complain of the admission of testimony of occurrences after the filing of the suit, and in overruling special exceptions as to the pleading of such occurrences.

The State alleged the plan and method of operation of Wilson and the manner of handling loans thereunder and further that

the defendants are threatening to continue their practice and unless restrained they will do so.

These transactions were so closely associated with the allegations that the defendants were engaged in the business of habitually loaning money at usurious interest as to be evidence of a general plan or scheme. McCormick & Ray, Texas Law of Evidence, 2d Ed., Sec. 1522.

■ Wilson's 16th point is that the trial court erred in admitting testimony to the effect that the alleged brokerage charges on loans from $5 to $50 amounted to from 192 per cent to 274.2 per cent. The objection was that there were no pleadings to support the introduction of such evidence and that there was an offer to stipulate that if such charges were interest then such charges exceeded 10 per cent per annum. Smith did not offer but refused to so stipulate.

The State's alleged cause of action was based on charges of usurious interest and to sustain its allegations the State had to prove that interest in excess of 10 per cent was charged. Wilson offered to stipulate as follows:

"At this time the Defendants, Dean Scritchfield and Wilson Finance Company offer to stipulate that if the charges made by them as brokerage fees were found in fact to be interest charges, that such charges do exceed ten percent per annum, for the purpose of preventing the testimony of the witness on the stand concerning percentage rates, * * *"

The offered stipulation was conditional and to that extent misleading. The attending circumstances of the loans was evidence of what in fact the charges were. The rule announced in Peightal v. Cotton States Building Co., 25 Tex.Civ.App. 390, 61 S.W. 428 and quoted in State v. Abbott Loan Service, Tex.Civ.App., 195 S. W.2d 416, 419, Er. ref., N.R.E., is that where:

"* * * 'there is doubt as to whether the transaction is a cover for usury, or a perfectly fair one authorized by law, then it is a question for the jury to determine, from all the facts and circumstances of the case, whether the transaction disclosed is bona fide in the ordinary course of business, free from the taint of usury, or whether it was a mere cloak and devise, under the form of an ordinary business transaction, to obtain more than legal interest.' * * * 'that any evidence surrounding and so connected with a transaction as will throw light upon it, and disclose, or tend reasonably to show, its true character, is admissible upon the issue of usury, although the contract is in writing, and appears upon its face fair and legal.'"

■ Wilson's point 17 complains of the admission in evidence of questions and answers from the deposition of J. A. Scritchfield. Generally these questions and answers relate to the number of loans made by Wilson from January 1, 1958 to June 30, 1958, the procedure for handling loans and payments made to Smith. The objections were that there were no pleadings as to the above matters. The volume of business done by Wilson and Smith, the charges made for loans and payments made to Smith were some evidence of their plan or scheme of doing business and was relevant to the issue of conspiracy. Moreover the evidence was cumulative of the admissions supra and to the testimony of Dean and Smith.

■ Wilson's point 18 and Smith point 4 complain of the trial court's judgment which after naming the parties reads:

"You and each of you are hereby perpetually enjoined and restrained from demanding, receiving or by use of any means attempting to collect from any borrower usurious interest on account of any loan, and from here-

after charging any borrower usurious interest or contracting for any usurious interest in the State of Texas."

The parties say they are not informed as to what they may do or what they are restrained from doing.

The State's suit was brought under Art. 4646b, supra, and the complained of language is substantially the same as is used in Sec. 1 of that article. It therefore conforms to the statute. 24–A Tex.Jur., Sec. 199, at page 308. We think the complained of language is clear and plainly informs the parties that they are restrained from demanding or collecting usurious interest which term is defined by statute.

■ Wilson's points 19 and 20 complain of the overruling of special exceptions to the State's petition because it fails to comply with Rule 682, Texas Rules of Civil Procedure and because the allegations are not sufficient to give defendants fair notice.

The injunction complained of was granted as a final decree after a hearing on the merits had after notice to the defendants and after they had answered and for which reasons the final decree is not affected by failure to verify the petition. 24–A Tex. Jur., p. 294, Sec. 187.

The State's petition specifically alleged that the defendants were engaged in the business of habitually loaning money and charging usurious interest therefor; that they were acting in conspiracy, joint adventure, scheme and subterfuge, and alleged named persons to whom loans were made and prayed for injunctive relief. The petition plainly alleged a violation of Art. 4646b, supra, and we fail to see how defendants were not fully and fairly notified of the acts charged against them and also the relief sought.

■ Wilson's point 21 complains that the trial court erred in overruling its special exception to the State's petition for failing to allege that defendants had entered into any contract for a greater rate of interest than 10 per cent per annum.

The State alleged: in paragraph III that defendants

"* * * have made and participated in the making of as many as three loans on which or in connection with which usurious interest (interest at a rate in excess of ten per centum [10%] per annum) is and has been charged and contracted for within a period of six (6) months next preceding the filing of this suit."

in paragraph IV that interest charged on each loan received by borrowers

"* * * at the Wilson Finance office, * * * is in excess of the rate of ten per centum (10%) per annum; * * *"

and in paragraph V there are allegations as to the brokerage contract and the fees charged by Wilson with the further allegation that

"Such amount in every case exceeds ten per centum (10%) per annum interest on the loan in addition to any actual and necessary expenses authorized by law and in addition to the ten per cent (10%) 'lender's discount', so called, which the borrower also has to pay on the loan."

The point is overruled.

■ Wilson's point 22 complains that the overruling of its special exception to the State's petition because it violated Rule 50, Texas Rules of Civil Procedure.

The State's petition contained numbered paragraphs from 1 to 5 both inclusive. Paragraph 5 alleges the plan and method of business of defendants, that such plan is a conspiracy, etc., that applications for loans are made to Wilson, how the loans are made, how the same are transferred to Smith, the payment of funds to Smith and the handling of funds by Wilson and Smith.

Concededly, paragraph 5 could have been separated and numbered by subparagraphs or even separated into separately numbered paragraphs. However the allegations therein are amply sufficient to fully apprise the defendants as to the charges brought against them and of their alleged plan of doing business for which reason they were not harmed.

■ Wilson's point 23 complains of the overruling of its special exception to the State's allegation:

"The method and plan of operation of Wilson Finance, acting in concert and conspiracy with L. C. Smith, is not in fact or in contemplation of law a bona fide or lawful brokerage operation, but is a joint adventure, conspiracy, scheme and subterfuge by and between L. C. Smith and Wilson Finance which is designed and conducted by them to mask and cover violations and evasions of the usury laws of the State of Texas under color of legal formalities."

If the State relied on a conspiracy, scheme, etc. between Wilson and Smith to show that the usury laws were violated it could hardly make such proof without alleging it. The following cases support our conclusion that the allegations were proper. Donoghue v. State, supra; Watts v. Mann, Tex.Civ.App., 187 S.W.2d 917, Er. ref.

Wilson's point 25 complains that the State's petition was not properly verified in that the verification was made by an assistant attorney general on information and belief. The question was raised by special exception.

Supra we have said the injunction was issued after final hearing, notice and answer filed and have held verification of the petition not necessary. Chesterfield Finance Co. v. State, Tex.Civ.App., 331 S.W.2d 368, Er. ref.

■ Wilson's point 26 complains that the trial court erred in granting leave to

the State to file its third amended original petition.

On the day the trial began and after the jury was selected but before the pleadings were read the State, with leave of the court, filed its third amended original petition. This amendment omitted the names of five parties named as defendants in prior pleadings and made other changes which Wilson's attorney stated to the court were not substantial. At that time Wilson objected and asked leave to file its third amended original answer which leave was denied. At that time Wilson's special exceptions had been heard and overruled. If the special exceptions to prior pleadings were properly overruled, as we have held they were, then Wilson suffered no harm by being denied leave to again present them against the amendment which made no substantial change in the pleadings since its general denial went to the amended pleadings. Rule 92, Texas Rules of Civil Procedure. We think that under Rule 63, Texas Rules of Civil Procedure, the filing of the amendment was properly permitted. Wilson does not even urge surprise.

■ Wilson's points 27, 28, 29 and 30 complain of portions of the following parts of the charge:

"(1) Actual and necessary expenses permitted and authorized by law are not to be considered as interest. In this connection, you are instructed that charges by a lender to a borrower for some distinctly separate and additional consideration other than the simple loan of money are authorized and permitted by law, but a lender may not make charges to the borrower which do not represent any additional or different service to the borrower, as when such charges are made merely to cover the trouble incurred in making and arranging the loan or for expenses comprising the general overhead or operating costs to the lender of conducting his loan business."

This was followed by an instruction as to compensation charged for guaranteeing a loan.

"(2) You are further instructed that in each loan transaction involved in this suit there exists a prima facie presumption that the actual and necessary expense permitted and authorized by law for making such loan was One Dollar ($1.00) for every Fifty Dollars ($50.00) or fractional part thereof loaned. Such presumption is not conclusive and may be overcome by the evidence, direct or circumstantial, if in your judgment there exists evidence to overcome such presumption."

"(3) You are further instructed that charges paid by a borrower to a broker as compensation for services in securing or guaranteeing a loan are not properly to be considered as interest in determining whether a loan is usurious; one may lawfully sell his credit by guaranteeing a loan, the compensation for which service is not properly chargeable as interest in determining whether the loan is usurious. The relations, however, of the broker or guarantor, compensation for whose services is charged to the borrower, must be bona fide, and not merely colorable for the purpose of concealing a usurious loan."

"(4) The terms 'charged' and 'contracted', as the same are used in this charge, refer to the real bona fide intention of the parties to a loan transaction with respect to their agreement or undertaking in the matter of the transaction, which intention will prevail regardless of whether it accords with or is in conflict with the formal agreements of the parties to the transaction."

The language of quote (1) supra closely follows the language of section 2a of Art. 4646b, supra, which is followed by an instruction as to what the lender may and may not charge. Quote (2) supra follows the language of the second paragraph of section 2a, supra. The (3rd) and (4th) quotes supra closely follow the law as announced in Donoghue v. State supra.

The State's case was brought under the provisions of Art. 4646b, supra, and the complained of instructions were consistent with the provisions of that article and with the pleadings. We think they are not subject to the objection that they constitute comments on the weight of the evidence.

■ Wilson's point 31 complains of submitted issue one and says that it is duplicitous in that it does not separately submit the elements which make up the charge of usury or habitually loaning money and charging usurious interest therefor.

The trial court in his charge defined interest, usurious interest, usury and habitually. Issue one simply inquired if the defendants acted in conspiracy to habitually loan money and charge or contract for usurious interest. The ultimate issue was whether the parties acted in conspiracy to do the thing charged and the several elements constituting this charge were defined by the trial court. We think that including these defined elements in the issue did not render it duplicitous.

Wilson's points 32 and 33 respectively complain that submitted issues 4 and 5 are duplicitous. The ultimate inquiry made by those issues and the pleadings was whether Wilson Finance Company and J. A. Scritchfield were engaged in the business of habitually loaning money and charging usurious interest therefor. A mere finding that these parties were engaged in the business of habitually loaning money would, under the pleadings, have been meaningless and the further finding that they charged or contracted for usurious interest was necessary to complete the charge against them. The court's definitions and instructions enabled the jury to answer the ultimate inquiry and we think Wilson was not harmed.

We have examined all points and are convinced that reversible error is not presented. The points are overruled and the judgment of the trial court is affirmed.

Affirmed