**PARGAS OF CANTON, INC. and Butane Supplies, Inc., Appellants,**

**v.**

**W. A. CLOWER, Appellee.**

**No. 398.**

Court of Civil Appeals of Texas.

Tyler.

Nov. 14, 1968.

James R. Lewis, Tyler, L. F. Sanders, Canton, for appellants.

Elliott & Elliott, Clyde Elliott, Jr., Canton, for appellee.

SELLERS, Justice.

About April 30, 1965, and just prior thereto, Pargas of Maryland, a foreign corporation, was negotiating with Butane Supplies, Inc., a Texas corporation, for the purchase of that company in Tyler, Texas. The stock of that company was owned by a Mr. Pickens, and Mr. Robert J. Woodall

was Secretary and an officer of Butane Supplies, Inc. During these negotiations, Pargas of Maryland desired also to buy County Butane of Canton. The majority of the stock of that company was owned by Lee Jennings, Chile Campbell, and appellee, W. A. Clower. These three men were operating County Butane of Canton at the time they sold their stock to Butane Supplies in Tyler. Butane Supplies was buying County Butane of Canton for Pargas of Maryland. Both companies were then transferred to Pargas of Maryland at the same time. Mr. Hill, Vice President of Pargas of Maryland, authorized Mr. Woodall, Secretary of Butane Supplies, to negotiate the purchase of County Butane of Canton. Mr. Woodall says he was ten to fourteen days negotiating with the owners of County Butane of Canton for its purchase.

Mr. Woodall, as a part of the agreement for the purchase of County Butane of Canton, took the following contract, signed by all three of the owners of County Butane of Canton:

"Agreement made this 30th day of September, 1965, by and between Butane Supplies, Inc., a Texas corporation ('Butane') and W. L. Campbell, Bonteel Jones, W. A. Clower, and A. L. Jen-

nings, all individuals residing at Canton, Texas (hereinafter referred to collectively as the 'Stockholders'), in consideration of the purchase by Butane from each of the Stockholders of 1000 shares of common stock of County Butane Company for a cash consideration and the cancellation of certain outstanding promissory notes executed by three of the said Stockholders, the parties hereto agree as follows:

"1. Each Stockholder agrees and warrents that neither he nor his spouse will, directly or indirectly, as owner, stockholder (of a company, other than Pargas, Inc., whose shares are not traded on the New York or American Stock Exchanges), partner, employee or otherwise, without the prior written consent of County Butane Company, at any time within the period of five years from the date on which the employment of any Stockholder is terminated by County Butane Company, engage in, or permit any person to use his name in engaging in, or provide financial assistance by loan, gift, or otherwise for anyone else to engage in the LP-gas business within an area of fifty (50) miles of Canton, Texas.

"IN TESTIMONY WHEREOF, witness our signatures this 30th day of September, 1965.

"ATTEST:

/s/ R. J. Woodall
      Secretary

"BUTANE SUPPLIES, INC.

By /s/ A. A. Pickens
        President

/s/ W. L. Campbell
W. L. Campbell

/s/ Bonteel Jones
Bonteel Jones

/s/ W. A. Clower
W. A. Clower

/s/ A. L. Jennings
A. L. Jennings"

This suit is by appellants to restrain W. A. Clower, the appellee herein, from accepting employment from another gas company to sell its products in the town of Canton and vicinity as a competitor of County Butane of Canton.

The case came on for trial before a jury and at the close of the evidence, the court submitted the following issues to the jury:

"SPECIAL ISSUE NO. 1:

"Do you find from a preponderance of the evidence that before or at the time the written agreement in question was signed on September 30, 1965, Plaintiffs and Defendant agreed orally that Defendant would continue in Plaintiff's employ for as long as Defendant's work was satisfactory?

"ANSWER 'YES' or 'NO'.

"ANSWER: _____Yes_____

"SPECIAL ISSUE NO. 2:

"Do you find from a preponderance of the evidence that such oral agreement, if any, was made as an inducement for Defendant to sign the written agreement in question?

"ANSWER 'YES' OR 'NO'.

"ANSWER: _____Yes_____

"SPECIAL ISSUE NO. 3:

"Do you find from a preponderance of the evidence that at the time Plaintiffs and Defendant made such oral agreement, if any, Plaintiffs did not intend to keep such oral agreement, if any?

"ANSWER 'YES' OR 'NO'.

"ANSWER: _____Yes_____

"SPECIAL ISSUE NO. 4:

"Do you find from a preponderance of the evidence that Plaintiffs failed to keep such oral agreement, if any, by terminating Defendant's employment on or about July 8, 1967?

"ANSWER 'YES' OR 'NO'.

"ANSWER: _____Yes"_____

The court, on the jury's verdict, denied the relief sought by appellants, from which judgment the appellants have duly prosecuted this appeal.

Mr. Woodall, who negotiated the contract for the purchase of County Butane of Canton for Pargas of Maryland, gave the following testimony:

"Q   State your name please.

"A   Robert J. Woodall.

"Q   Where do you live?

"A   In Tyler.

"Q   What is your business?

"A   I'm now credit manager and office manager for Holman, Bennett, Phillips Equipment Company.

"Q   What kind of company is that?

"A   Heavy equipment, bulldozers and road building equipment.

"Q   How long have you been doing that?

"A   About 18 months.

"Q   What age man are you?

"A   52.

"Q   Mr. Woodall, what were you doing September 30, 1965?

"A   I was secretary-treasurer of Butane Supplies, Incorporated of Tyler.

"Q   Who owned Butane Supplies Company?

"A   The principal stockholder was Mr. A. A. Pickens.

"Q   When you say secretary-treasurer, you were an officer of that corporation?

"A   That's right.

"Q   In that position were you familiar with the transaction whereby Par-

gas of Maryland was buying stock of Butane Supplies of Tyler?

"A Yes, Sir.

"Q Were you also familiar with the transaction whereby Pargas of Maryland was buying the County Butane Company of Canton?

"A Yes, Sir.

"Q Mr. Woodall, how long did the negotiations for the purchase of County Butane of Canton last, over what period of time?

"A I would say and this is strictly from memory, over a period from 10 to 14 days at the most.

"Q Did you have any personal contact with those negotiations?

"A Yes, Sir.

"Q Could you tell the jury what that was?

"A Since I was also the secretary-treasurer of County Butane Company and an officer I had authority to do most of the negotiating between them under instructions from not only Mr. Pickens but also Pargas people.

"Q Who gave the instructions from Pargas people?

"A Mr. Bill Hill, who was the principal negotiator and I understand he was at that time executive vice president of Pargas, Incorporated.

"Q Did you have a conversation with him?

"A Yes, Sir.

"Q Did he instruct you to purchase the Canton Company?

"A Yes, Sir, the stock in that company.

"Q Were you authorized to make any particular representations to the stockholders here?

"A Yes, Sir.

"Q What were those representations?

"A Monetary difference. Let me digress a little bit. Butane Supplies, as such, held notes from the stockholders of County Butane Company. It seems to me there was a monetary consideration over and above the cancellation of those notes, five or six hundred. As to the exact figure I have no idea.

"Q Within that range figure?

"A That's right.

"Q Were there any other considerations to be paid to the stockholders here in Canton, Mr. Clower, Mr. Campbell, Mr. Jennings or Mr. Jones for the purchase of this company?

"A Yes, there was and it came about this way: Mr. Hill said he wanted a contract not to compete with these boys. As I recall, he dictated it to the lady in the office and at the same time this contract was prepared there was also an instrument prepared for myself and the other two officers to sign and my question to him was: 'You want them not to compete. What shall I tell them? What other consideration or what's to be done?' The answer I received, as I recall it, 'Well, as long as their services are satisfactory to the company they will have a job.'

"Q Did you pass that on to them?

"A I did.

"Q Was that before the contract was signed?

"A No, this was at the same time. The money was settled two or three days before. So many things were happening at that time I couldn't tell you what came ahead of the other.

This I passed on verbally to these boys was on the day of September 30th. At the same time after they had signed over their stock the notes had been passed to them and the checks.

"Q Let me ask you this: You and Mr. Langley came here on September 30, '65 to close this transaction?

"A As I recall, that's right.

"Q Prior to the signing of this contract by these stockholders here in Canton, Mr. Clower, Mr. Jennings and Mr. Campbell, were they told at that time they would have their job at $350.00 a month plus insurance benefits and retirement benefits as long as their services were satisfactory?

"MR. SANDERS: Somebody else had to authorize it. We object.

"Q I will add to that question. Were they told by you or Mr. Langley?

"MR. SANDERS: Object to the double question.

"THE COURT: Objection overruled.

"MR. SANDERS: Note our exception.

"A They were told that as long as their services were satisfactory there would be a job. Let me go back a little bit. It was the understanding all the way through, not only with the boys here, but—

"MR. SANDERS: If the Court please, he can't say what the understanding was except his.

"THE COURT: Sustain the objection.

"A I was told, as well as these boys, that with an expanding company that they always needed good men, that there would be a place for good men. To be more specific, this was prior to September 30th, but on September 30th I passed on exactly what Mr. Hill told me to tell them. That was, as consideration for signing this contract, in addition to the other things, as long as their services were satisfactory they would have a job."

Practically the same evidence was given by the appellee when called to testify by the appellants' attorney.

Appellants have a number of assignments of error to the court's action in overruling their exceptions to the appellee's answer. The complaint is that the allegations are "immaterial, prejudicial and inflammatory." We overrule these assignments on the authority of Kelly v. Wright, 144 Tex. 114, 188 S.W.2d 983, where it was held that such exceptions are nothing more than a general demurrer and violate Rules 90 and 91, Texas Rules of Civil Procedure.

Other assignments of appellants complain of the court's charge. The record reveals that there was neither exception or objection presented to the trial court before the charge was presented to the jury. We are of the opinion that an error by the court in the charge to the jury to appellants' prejudice, if any, was waived. Terry County Airport Board v. Clark, Tex.Civ.App., 378 S.W.2d 932. See also Leatherwood v. Holland, Tex.Civ. App., 375 S.W.2d 517.

The real complaint on this appeal is of the action of the court in admitting parol evidence to show the real consideration for the contract sued upon. We are of the opinion the evidence was admissible since the consideration was in addition to that expressed in the contract and would not contradict any of the written provisions of the same as to consideration. Rubin v. Adams, Tex.Civ.App., 368 S.W. 2d 42.

Appellants having agreed, as a part of the consideration for the purchase of County Butane of Canton from appellee, to

give him employment as long as his services were satisfactory, and having fired him for other reasons, could not come into a court of equity to enforce the provisions of the contract sued upon. Langdon v. Progress Laundry & Cleaning Co., Tex. Civ.App., 105 S.W.2d 346, and authorities therein cited.

We have reviewed all of appellants' assignments and believe them to be without merit, and they are overruled.

Judgment of the trial court is affirmed.