**INTERNATIONAL SECURITY LIFE IN-SURANCE COMPANY, Appellant,**

v.

**Mrs. C. F. FINCK, Appellee.**

**No. 8200.**

Court of Civil Appeals of Texas, Amarillo.

Dec. 27, 1971.

Rehearing Denied Jan. 24, 1972.

Thompson, Coe, Cousins, Irons & Porter, Larry L. Gollaher, Dallas, for appellant.

Gibbins & Spivey, Broadus A. Spivey, Austin, for appellee.

REYNOLDS, Justice.

The proceeding that is the subject matter of this appeal concerns a policy of hospital and surgical insurance. C. F. Finck brought suit to recover indemnities, under a hospital and surgical policy of insurance issued by International Security Life Insurance Company, for hospital and surgical expenses incurred, interest, statutory penalty and reasonable attorney fees for nonpayment of the claim, and for actual and exemplary damages and reasonable attorney fees by reason of fraud and deceit in connection with the issuance of the policy. Reformed and affirmed.

Trial was before a jury. Plaintiff presented as witnesses Mrs. C. F. Finck, E. A. Buck, Sr., and attorneys Joe L. Cox, Jerome Kirby, Forrest Bowers, Broadus A. Spivey and Bob Gibbins. Defendant presented the testimony of its trial counsel, David Farris, whose direct testimony was directed to the elements to be considered in determining reasonable attorney fees. From the testimony of these witnesses, the instruments introduced in evidence and the pleadings, evolves the following statement of the case.

Mr. Finck was 81 years of age and partially blind when, on or about January 24, 1969, one David Cockrell, stipulated to be a soliciting agent for International Security acting within the course and scope of his employment, appeared uninvited at the Finck home. According to Mrs. Finck, Cockrell introduced himself and stated he was representing International Security. The Fincks never had heard of the com-

pany prior to this time. Cockrell "said he had the best policy that was put out," and that "it would cover everything that Medicare didn't cover." Further, Cockrell said "they would always pay their claims" promptly, but he did not say anything about any pre-existing conditions, exclusions or limitations. Mrs. Finck said they never had secured and needed hospitalization insurance, relied upon the statements of Cockrell, and "we wouldn't have taken out the policy if we didn't believe" Cockrell. She said if they had not received this policy, they would have taken out another one. Mr. Finck had returned from World War I with "some stomach trouble," but did not see a doctor or go to a hospital because of it; he "was always very healthy and stout, he never was sick very much," and "did his own farming." Cockrell completed the application for the policy for Mr. Finck, inserting the health information given him, including "had stomach trouble" under the section asking for illnesses within the past seven years, but no date was entered in the space provided for recording the date of illness. Mrs. Finck signed Mr. Finck's name to the application. Cockrell collected the initial annual premium of $148.00.

The policy was issued on and effective February 5, 1969, and received by the Fincks through the mail. Mr. Finck did not read the policy, but Mrs. Finck read part of it. She noticed "there was a whole lot of difference in there from what he (Cockrell) was representing it." When asked if she read the notice on the policy that it could be returned within ten days and the premium paid would be returned, Mrs. Finck said, "No. We supposed—we taken the policy. We intended to keep it."

Mr. Finck entered the hospital because of "stomach trouble, ailment" and was hospitalized from January 5 through January 24, 1970, incurring the amount of $1,087.40, stipulated to be reasonable and necessary, for hospital and medical expenses. Timely proof of loss was filed and International Security denied the entire claim on the basis that the illness originated prior to the effective date of the policy.

Suit was filed May 20, 1970, seeking recovery under the policy of insurance for the $1,087.40 hospital and medical expenses, the statutory penalty of 12% and interest thereon, and reasonable attorney fees of $2,500.00; and, alternatively, for actual damages of $1,087.40 and exemplary damages of $2,500.00 plus $2,500.00 attorney fees for misrepresentation, fraud and deceit in the issuance of the policy of insurance. The acts alleged to constitute the fraud were false representations that the policy of insurance would indemnify against all medical expenses without regard to pre-existing medical conditions; the concealment that International Security has the reputation of receiving money for insurance policies and then refusing to pay legitimate claims on spurious and technical grounds; that because of Mr. Finck's age and prior existing conditions, International Security, through its agent Cockrell, took his money and issued the policy, with the knowledge that he would not be able to collect under the policy, or he could collect such a minor amount that it would not be worthwhile to enforce his rights; and that the policy contained a statement that it was not necessary to employ an attorney to collect any benefits provided in the policy. By these means, it is alleged, International Security had the intention, express and implied, to induce Mr. Finck to rely upon the insurance policy, which he did, causing him to refrain from obtaining other insurance which he would have obtained "had he known defendant's policy was not any good, and that defendant had the reputation of not paying legitimate claims," and that he did refrain from obtaining other insurance, to his damage in the sum of not less than $1,087.40. Mr. Finck died on July 7, 1970, as the result of a heart attack, and upon Mrs. Finck's suggestion of his death and her motion that she was the surviving widow and heir, she was substituted as plaintiff. Thereafter, International Security answered the suit with special exceptions,

which were acted upon by the trial court, a general denial, and an alternative pleading that its liability under the policy was limited to $320.50.

Mr. Buck testified that he purchased one of International Security's policies through its agent Cockrell, he incurred medical expenses, and, over objection that the testimony was not material and was prejudicial, he was permitted to testify that Cockrell told him the policy would cover everything, that his claim was denied, that he was required to employ an attorney, and that his case was the one on the docket following this case. The attorney witnesses, each of whom was stipulated to be an expert in the area of hospitalization policy law, testified that they had represented numerous clients in the prosecution of insurance claims against International Security and that they never had heard of International Security paying one claim without the policyholder having to file suit; and, over objection that it would be hearsay, each testified that International Security's reputation in the area was that it would not pay claims at all.

After both parties had closed and prior to submission of the case to the jury, the parties stipulated that plaintiff was entitled to recover $320.50 under the policy, plus the 12% statutory penalty and interest thereon, that International Security waived the defensive issues to the claim, and that no issue of liability or contract damages under the policy would be submitted to the jury, without prejudice to any other ground of recovery or defense. In answer to the special issues submitted, the jury found: (1A) International Security's agent represented it had the reputation of promptly paying claims, (1B) which representation was false, (1C) was relied upon in purchasing the policy, and (1D) was a material inducement in purchasing the policy; (2A) the agent represented the policy would be in effect as soon as it was received and would pay for everything Medicare did not pay, (2B) such representation was false,

and (2C) was relied upon in purchasing the policy; (3A) International Security had the reputation of refusing to pay legitimate claims on similar policies, (3B) which reputation was concealed, and (3C) was a material inducement in purchasing the policy; (4A) such false representations or concealment was a proximate cause of damages, (4B) which were $1,217.88; (5) reasonable attorney fees were $2,500.00; and (6) exemplary damages should be awarded in the amount of $2,500.00. Judgment was entered in the total amount of $6,596.07, which included the stipulated contract recovery of $320.50, $19.23 as interest thereon, $38.46 as the 12% statutory penalty thereon, $1,217.88 actual damages, $2,500.00 exemplary damages and $2,500.00 attorney fees. International Security has appealed from the judgment.

In bringing this appeal, appellant International Security prays for a reversal and remand for a new trial on eleven points of error. Mrs. Finck, as appellee, has responded with counterpoints, and one cross-point in which she requests this court to exercise its inherent power and authorize attorney fees of $1,000.00 for the appeal of this cause. In reaching the disposition we make of this appeal, we have confined our determination to the specific assignments before us. Rule 374.[1]

Appellant has filed its motion to strike appellee's supplemental brief filed after submission and oral argument, or alternatively to extend permission for a reasonable time to file a reply brief. We have determined not to consider the supplemental brief in our disposition of this appeal, and have, therefore, effectively granted the motion to strike.

Our first consideration is given to appellant's point of error number nine, its final point, that the trial court erred in overruling its special exception to paragraph VIII of plaintiff's original petition, the paragraph containing the alternative pleading for actual and exemplary damages

---

1. All references to rules are to Texas Rules of Civil Procedure.

and attorney fees based on fraud. The special exception lodged was that the paragraph contained "many libelous statements based entirely upon heresay (sic) which are so prejudicial and flamatory (sic) as to be objectionable as a matter of law." For the purpose of its argument, appellant concedes that the special exception, like the paragraph excepted to, is not a model of clarity, but contends that the paragraph did not comply with Rule 50 by placing the averments in separately numbered paragraphs, that the exception was sufficient to call the court's attention to the fact that the paragraph referred to International Security's reputation, and that the exception was sufficient to require the court to take some remedial action. We do not believe the authorities support this contention. The exception as framed amounted only to a general demurrer. Pargus of Canton, Inc. v. Clower, 434 S.W.2d 192 (Tex.Civ. App.—Tyler 1968, no writ). With respect to the pleadings, Rule 90 abolished general demurrers, and provides that every defect, omission or fault not specifically pointed out by the exception as required by Rule 91, shall be deemed to have been waived by the party seeking reversal on such account. Kelly v. Wright, 144 Tex. 114, 188 S.W.2d 983 (1945). Certainly the exception did not clearly state the nature of the errors complained of as required by the rules and as is clearly stated in the brief filed in this court. Furthermore, tested by the exception taken to it, the paragraph alleging concealment and false affirmations of material facts made for the purpose of inducing a bargain and actually accomplishing the purpose with resulting damage, was a sufficient pleading to support the cause of action based on fraud. As stated in 26 Tex.Jur.2d Fraud and Deceit § 99:

"* * * If a general rule can be stated, it may be said that the petition is sufficient if the allegations show clearly

the devices and misrepresentations that were adopted to bring about the alleged deceit. A general charge or statement of each material fact is sufficient; it is not necessary to charge minutely all the circumstances that may conduce to prove the general charge, for circumstances are properly matters of evidence. In other words, the plaintiff need state only the facts from which the elements of fraud may be inferred. * * *"

Although paragraph VIII was not, and could have been, separated into different numbered paragraphs, as provided by Rule 50, the allegations are amply sufficient to inform appellant of the fraudulent action alleged. Wilson Finance Company v. State, 342 S.W.2d 117 (Tex.Civ.App.—Austin 1960, writ ref'd, n. r. e.[2]). Point of error number nine is overruled.

Points of error numbered one, two and three are that the trial court erred in submitting, respectively, special issues nos. 1A, 2A, and 3A and 3B, and the related subsidiary issues, and in rendering judgment thereon. Appellee answers that appellant waived these points of error because of indistinct objections, and addresses that portion of her brief to the issue of waiver. We have examined the record and believe the objections made are sufficient for the points relied upon to be considered.

The vice attributed to special issue 1A is that it is not supported by the pleadings or the evidence. The contentions are that it is not alleged that defendant, through its agent, represented that it had a reputation of promptly paying claims, and no testimony established that Cockrell ever said anything about reputation. For the reasons stated in our disposition of appellant's point number nine, we hold that the pleadings were sufficient in this respect; but we agree with appellant that the issue is not supported by the evidence. The only evidence that might conceivably bear on the issue is Cockrell's

---

**2.** The Texas Writs of Error Table shows 348 S.W.2d 639 for the writ history, but the latter is an opinion by the same court holding it did not have jurisdiction to entertain the motion filed to amend its opinion in 342 S.W.2d 117, in which application for writ of error was refused, no reversible error.

statement that appellant would always pay claims promptly and his silence as to appellant's reputation in that respect. Neither Cockrell's statement nor his mere silence is that representation which will support this issue inquiring as it does about reputation. As framed and without a supporting definition or instruction, the issue lends itself only to the inquiry of whether or not there was an affirmative assertion by Cockrell that appellant had the reputation of promptly paying claims by its policy holders. In this context, the issue is not supported by the evidence. Appellant's first point is sustained.

■ Appellant urges that special issue 2A presented an erroneous legal concept in that it was an evidentiary rather than an ultimate issue, and, in any event, was not supported by sufficient evidence. The erroneous-legal-concept position is predicated on the rule that if an insurance policy does not contain the things represented by the agent, the insured may refuse to accept the policy, but if he accepts the policy, he is bound by its terms. Appellant says that since the policy was accepted in this instance, appellee is bound by the provisions, especially since a claim was presented and prosecuted thereunder. In support of this proposition, the case of Reserve Life Ins. Co. v. Wilkins, 278 S.W.2d 904 (Tex.Civ. App.—Amarillo 1955, no writ), which enunciates the rule is cited. We believe that case correctly applied the rule to the facts of that case, but that the case is not controlling of the facts present in the case before us. There, the insured sued on the contract and alternatively for rescission and return of the premiums paid because of misrepresentation, two inconsistent remedies. Here, appellee's suit is for recovery under the contract and for additional actual and exemplary damages in tort independently of the contract because of fraud, two consistent remedies. In the latter event, the tort is dependent upon, and at the same time independent of, the contract. Shirley v. Waco Tap R. Co., 78 Tex. 131, 10 S.W. 543 (1889). Under such

circumstances, the injured party in a contract based on fraud may elect to retain the benefits of the contract, confirm its validity, and additionally recover damages for the fraud by which the injured party was induced to make the contract. Grabenheimer v. Blum, 63 Tex. 369 (1885); Dyer v. Caldcleugh & Powers, 392 S.W. 2d 523 (Tex.Civ.App.—Corpus Christi, 1965, writ ref'd n. r. e.).

■ Appellant contends that the "covered everything" representation is strictly touting and this is insufficient to support the issue. We do not subscribe to this contention. To assert that one has the best policy put out is one thing, but, in making a sales pitch to an elderly person who does not have and needs hospitalization insurance, it is a far different matter to represent that the policy will cover everything not covered by Medicare. The evidence is uncontroverted that Cockrell made this representation. He was in a position superior to that of the Fincks to know the coverage afforded by the policy he was entrusted with and selling. In the circumstances of this case, the representation is not an expression of mere opinion, but is a definite assertion of a material fact made for reliance thereon, and upon which the injured party is entitled to rely and to base an action for damages when the representation is proved to be false. 37 C.J.S. Fraud § 10. Appellant's second point is overruled.

■ Appellant's third point of error is directed to special issues 3A and 3B; however, in its brief, no attack is made on the jury's finding in response to special issue 3A that International Security had the reputation of refusing to pay legitimate claims on similar policies issued by it. The thrust of the argument is that there is no evidence of active conduct amounting to concealment of appellant's reputation. It is pointed out that Cockrell made no statement as to reputation; that an agent has no duty to inform a purchaser of facts which he knows might affect the buyer's evaluation of the object sold, unless there is a fi-

duciary relationship which is not present here; and that concealment of a reputation that is proved to exist "in the mind (sic) of attorneys and judges of a tight claims policy cannot be held actionable." We do not take exception to appellant's general propositions or to the authority cited only with respect to the rule on the duty to speak; however, appellant overlooks the correlative rule that a duty to speak may arise from partial disclosure, the agent being under a duty to tell the whole truth although he was required to say nothing, for one may convey a false impression by the disclosure of some facts and the concealment of others. 37 C.J.S. Fraud § 16. Here, as noted, appellant does not challenge the jury finding that International Security had the reputation of refusing to pay legitimate claims on policies similar to the one issued to the Fincks. The agent, under the circumstances, was under no duty to disclose that reputation, but when he chose to state, in order to induce the sale, that appellant always paid claims promptly, that misrepresentation was the converse of the actual reputation. Therefore, we hold here that when the agent undertook to speak at all, it became his duty to speak the truth, and the concealment or suppression of the truth of appellant's reputation, when coupled with the actual misrepresentation to the contrary, was sufficient to amount to active conduct supporting the submission of, and the finding in response to, special issue 3B. Appellant's point number three is overruled.

By its fourth point of error, appellant asserts that there is no evidence to support any monetary damage caused by its alleged misrepresentations or concealment as found by the jury in answer to special issue no. 4B; and point of error numbered four–A is that such damages awarded are so excessive and manifestly too large as to require a new trial. Appellant does not directly assail by a point of error the jury's finding in answer to special issue no. 4A that the misrepresentations or concealment found to exist was a proximate cause of damages. Nevertheless, in relation to the two points of error, appellant takes the position that there is no evidence of monetary damages on the assumption that its points of error directed to special issues 1A, 2A and 3B would be sustained, leaving no misrepresentations or concealment to support the finding to special issue 4A. While we have sustained appellant's first point of error, holding that special issue 1A is not supported by the evidence and that the issues subsidiary thereto fall also, we have overruled appellant's points numbered two and three, and there remains intact those jury findings of material misrepresentation and concealment upon which special issue 4A is predicated. Fraud, in its generic sense, comprises *all* acts, omissions and concealments involving a breach of legal or equitable duty and resulting in damage to another. Bondies v. Glenn, 119 S.W.2d 1095 (Tex.Civ.App.— Eastland 1938, writ dism'd). Thus, the unchallenged issue no. 4A, supported by the jury's responsive answers to the cluster of special issues numbered 2A through 3C, inclusive, is reflective of some evidence of probative force to support monetary damages for misrepresentation or concealment. It follows that the no evidence point number four must be overruled.

The jury, in reply to the special issue inquiry number 4B, found the actual damages to be $1,217.88. Appellant attacks the lack of fact of legal damage, citing two cases in which the evidence failed to establish any fair basis upon which damages could be found had the representation there made been fulfilled. This instant case does not fall within that category because here there is determinable the amount of damages recoverable under the policy of insurance had the representation made been true. This is at least tacitly conceded when appellant argues that the entire hospital and medical expenses were $1,087.40, upon which must be credited the $320.50 stipulated to be recoverable under the policy, "leaving at most uncovered medical in the amount of $760.90." In rebuttal, ap-

pellee suggests that the jury may have considered the $148.00 premium paid as out-of-pocket expense in addition to the total expenses of $1,087.40 in arriving at its answer. Even these two sums are not the total of the amount found by the jury. In any event, since appellee elected to confirm the validity of the policy contract and not seek a rescission, she is not entitled to recover the premium paid. Appellee pleaded damages in the total sum of only $1,087.-40, the amount supported by the uncontradicted evidence. It was stipulated that the sum of $320.50 was recoverable under the policy without prejudice to any other ground of recovery. Consequently, actual damages not stipulated to be provided by the policy are only $766.90, and the judgment in excess of the amount pleaded is erroneous. Rule 301. The error in the judgment may be corrected by a reformation of the judgment to reflect the correct amount. Kleiner v. Eubank, 358 S.W.2d 902 (Tex.Civ.App.—Austin 1962, writ ref'd n. r. e.). Except to the extent herein noted, point of error number four–A is overruled.

■■■■■ Special issue no. 5 inquired of the amount of reasonable compensation for attorney fees "for the presentation, prosecution and trial" of the lawsuit "to collect the sums due under the policy in question." The jury answered $2,500.00. Point of error number five is that there was no evidence to support the submission of the issue to the jury. Point of error number five–A is that the issue did not clearly and meaningfully limit the inquiry to only reasonable attorney fees necessary to prosecute solely the suit on the policy. The testimony pertaining to attorney fees was relative to the preparation, presentation, prosecution and trial of all aspects of appellee's suit. The testimony was material to reasonable attorney fees to recover under the policy and to exemplary damages, an element of which may be reasonable attorney fees, and reflected application of professional skill and time in a value more than twice that found by the jury in its answer to special issue no. 5. Appellant

does not challenge the sufficiency of the evidence to support the award, but reasons that the testimony was not segregated as to the claim on the policy from the fraud aspect of the suit, and, as a result, there is no evidence to support the submission of the issue. It was not until all the testimony had been presented and the case was ready for submission to the jury that appellant stipulated appellee was entitled to recover under the policy. There was no stipulation as to attorney fees. Reasonable attorney fees are authorized to be recovered in such instances. V.A.T.S. Insurance Code, art. 3.62. We credit a reading of the issue complained of with the demonstration that it properly presented, and limited the jury's determination to, the reasonable attorney fees for the policy contract part of the suit under the dictates of Rule 277.

■■■■ As appellant notes, the case of Great American Reserve Ins. Co. v. Britton, 406 S.W.2d 901 (Tex.Sup.1966), holds that attorney fees in an insurance case is a question of fact to be determined by the jury and their finding must be supported by competent evidence. That evidence consists in the facts before the jury in relation to the services rendered, as well as the estimates of the value given by the attorneys who testified, and is not required to show some precise preconceived mathematical ratio to the actual recovery. Magids v. Dorman, 430 S.W.2d 910 (Tex.Civ.App.—Houston (14th Dist.) 1968, writ ref'd n. r. e.). Therefore, there being some evidence of probative force to support the jury's answer to a proper issue, we overrule points of error numbered five and five–A.

■■■■ The sixth point of error is that there was no evidence to support the award of any exemplary damages. It is well recognized in Texas that a breach of contract occasioned by a distinct tort, alleged and proved in addition to or coincident with the contract breach, will support an action for exemplary damages, independently of any right to recover actual damages by reason of the breach of contract alone. Hooks v.

Fitzenrieter, 76 Tex. 277, 13 S.W. 230 (1890). As its answer to special issue no. 6, the jury found exemplary damages in the sum of $2,500.00. Initially, the no evidence assignment approach is bottomed on the validity of appellant's preceding points that this suit is confined to an action *ex contractu* and not *ex delicto*, and therefore only contractual damages, as opposed to actual damages, are recoverable, thus precluding exemplary damages. Previously we have held adverse to these propositions, upholding both the tort aspect and the entitlement to actual damages found by the jury. Next, appellant says that, of the categories of conduct that will support exemplary damages, only fraud can be considered under the facts of this case. In that event, appellant argues, there must be proof of knowledge of the false representation and the intent to deceive; and that there is no evidence that appellant possessed scienter at the time of the alleged fraud, or authorized or ratified Cockrell's act found to be fraudulent. Knowledge and intent are held to be prerequisites to recovery of exemplary damages. Baker v. Moody, 219 F.2d 368 (5th Cir. 1955); 26 Tex.Jur.2d Fraud and Deceit § 127.

The evidence is that it was International Security, and not Cockrell, that created appellant's reputation of not paying legitimate claims. The jury found the reputation existed and was concealed. Notification of the false representation and concealment of reputation, as well as the claim for exemplary damages, was contained in plaintiff's original petition. Upon notification, appellant did not disclaim the representation or concealment to the extent of affirmatively denying them and offering to rescind the policy contract and return the premium paid. Appellant did not except to the pleadings, or object to the evidence or to the charge of the court, and did not complain in its motion for new trial, on either of the two grounds raised here. Appellant not only did not offer any evidence to refute the grounds of fraud charged, but, seemingly to the contrary, stipulated that Cockrell at the time was acting within the course and scope of his employment. If appellant did not intend to ratify Cockrell's acts, it was incumbent upon appellant, on receiving notification that the transaction was alleged to be fraudulent, to give notice of Cockrell's want of authority, and to rescind the transaction, and having failed to do so, is held to have ratified the act of its agent. Morrison v. Ins. Co. of North America, 69 Tex. 353, 6 S.W. 605 (1887). The proof is sufficient to support findings of knowledge and scienter.

Appellant directs attention to the fact that the trial court did not submit an issue on intent. The salient point, however, is that the issues of knowledge and scienter were a part of the cluster of fraud issues to support exemplary damages, and, appellant not objecting to the cluster because of the failure to include these issues, waived the submission to the jury. There being evidence of knowledge and intent, these issues are deemed to have been found by the trial court in such manner as to support the judgment entered on the jury's verdict. Rule 279. Appellant's sixth point of error is overruled.

Points of error seven and eight complain of the trial court's admitting into evidence the district clerk's complete file in the case of Helm v. International Security Life Insurance Company [3], testimony concerning appellant's purported bad claims reputation, and evidence on extraneous claims and lawsuits. Appellee's original petition on which she went to trial alleged, in part, that the defendant's agents knew, at the time the insured's application was solicited and his money taken, that plaintiff, due to his age, had prior existing conditions which would render it impossible for him to collect on his policy; that his predicament would be like that of "a multitude of others who find themselves in his same position"; that

---

3. The appellate history is recorded in International Security Life Insurance Co. v. Helm, 447 S.W.2d 956 (Tex.Civ.App.— Tyler 1969, no writ).

these agents had fraudulently concealed the defendant's reputation for taking people's money for premiums and then refusing to pay legitimate claims on technical and spurious grounds. In short, among the other allegations, was the charge of an habitual, intentional scheme to defraud the public, especially, that segment composed of elderly persons.

■ The evidence admitted by the trial judge was admissible to show the system, scheme and plan of defrauding the public alleged in the petition, and it was admissible to show the *bona fide* intent. Wilson Finance Company v. State, supra; 2 McCormick & Ray, Texas Evidence, § 1522 (2d ed. 1956). As noted previously, a showing of fraudulent intent would appear to be a prerequisite to an award of exemplary damages in this case, Baker v. Moody, supra; 26 Tex.Jur.2d Fraud and Deceit § 127, and evidence of other similar acts by the defendant is therefore admissible to prove that intent. Wilson Finance Company v. State, supra.

■ Although the case file of Helm v. International Security Life Insurance Company appears to this court to have been of little relevancy to the contention of the alleged fraudulent scheme, the only objection leveled at its admission was to the effect that the file was "hearsay." This ground of exclusion was without merit, and any other possible grounds on which the file could have been excluded were waived. 1 McCormick & Ray, Texas Evidence, § 22 (2d ed. 1956); 56 Tex.Jur.2d Trial § 158; Rule 373. As to the other evidence of bad reputation and extraneous claims, the record reveals that counsel for appellant withdrew his objection to exhibit #1, the docket sheet for Hale County showing the setting of cases against International Security for that particular session of the district court; if any proper objection can be said to have been made to exhibit #5, a letter denying a claim on the ground of preexisting condition, it was that the letter was hearsay, and any other ground of ex-

clusion was waived; the only objections made to the testimony of Mr. Cox as to extraneous claims and bad reputation were those of hearsay; and, as to the testimony of Mr. Kirby as to other claims and bad reputation, appellant's trial counsel inquired of the court as to the necessity of his stating his objection, and upon receiving an affirmative answer, replied, "Thank you" and said nothing more. Reputation is the estimation in which one is held, and includes the standing in public opinion in the area, and is nothing more than hearsay of those acquainted with the facts. The practice of receiving in evidence the reputation of the community on a number of matters was in existence prior to the establishment of the hearsay rule; and there exists today, as an exception to the hearsay rule, the practice of admitting evidence of the general reputation in the community with respect to matters of general or public interest. 2 McCormick & Ray, Texas Evidence § 1321 (2d ed. 1956). It is our opinion that the foregoing evidence was admitted without proper and specific objection and that appellant waived its grounds of exclusion if indeed any proper grounds existed. Points seven and eight are overruled.

■ Mrs. Finck's cross-point requesting attorney fees for this appeal is overruled. The trial court's judgment is silent as to any additional attorney fee in the event of an appeal. In Texas, the award of any attorney fee must be by an original factual determination in the trial court, and the court of civil appeals, in exercising its appellate jurisdiction, may not initiate the award. International Security Life Insurance Company v. Spray, 468 S.W.2d 347 (Tex.Sup.1971).

■ At the conclusion of its brief filed in this court, appellant places certain interpretations on the proceedings and reaches the conclusion that appellant did not receive the fair and impartial trial to which it was entitled. We think the apt response predated appellant's assertion

when, in 1861 the Supreme Court of Texas in Austin v. Talk, 26 Tex. 127, stated:

" * * * Upon a question of positive fraud, the court will be very slow to disturb the verdict of a jury where the evidence discloses suspicious circumstances of a character to induce the belief that any artifice, concealment or misrepresentation, has been practiced, or that confidence reposed has been abused to the prejudice of the party complaining. * * * "

Under the circumstances of this case, this court will not hasten to disturb the jury's verdict except as we must.

The judgment of the trial court is reformed to fix the sum of actual damages in tort at $766.90 in lieu of the $1,217.88 included therein, and, as reformed, is affirmed.