Robert B. **INGLISH**, Appellant,

v.

**UNION STATE BANK**, Appellee.

No. 13–94–260–CV.

Court of Appeals of Texas,
Corpus Christi.

Nov. 16, 1995.

Rehearing Overruled Dec. 14, 1995.

---

Charley L. Smith, Bellville, for appellant.

David S. Elder, Houston, for appellee.

Before DORSEY, FEDERICO G. HINOJOSA, Jr., and RODRIGUEZ, JJ.

## OPINION

DORSEY, Justice.

Appellant Robert Inglish sued Union State Bank ("the Bank"), alleging that the Bank violated the Texas Deceptive Trade Practices

Act ("DTPA") and that it was guilty of negligence, fraud, breach of contract, wrongful sequestration, and tortious interference with a contract. The Bank attacked the first three causes of action (DTPA, negligence, and fraud or negligent misrepresentation) in a motion for summary judgment, which was granted. The Bank then filed a second motion for summary judgment as to appellant's remaining claims. The second motion was also granted, and appellant was ordered to take nothing in his suit.

By two points of error, appellant complains of the trial court's grant of summary judgment against him in his action against the Bank. The Bank requested dismissal of appellant's appeal alleging untimeliness. We overrule the Bank's motion to dismiss the appeal and affirm.

## BACKGROUND

In February of 1991 appellant purchased 400 head of cattle from Larry Janssen, believing that Mr. Janssen was acting on behalf and with the authority of HK Ranch. The bill of sale for the cattle was from HK Ranch and was dated February 11, 1991. The "Sale and Repurchase Agreement Contract" for the cattle was between appellant and "Larry Janssen, d/b/a HK Ranch" and was dated February 12, 1991. The "Recitals" section of the contract stated that the "Ranch desires to sell, and Inglish desires to buy four hundred (400) head of ... cows ... currently owned by Ranch...." The contract also included express warranties by the Ranch that it was the sole owner of the cattle and that no other party had any claim or lien on the cattle being sold.

The day after the contract was signed, appellant spoke with Clem W. Boettcher, president of the Bank, who had been named by Janssen as a reference. Appellant had learned that the Bank had filed a UCC financing statement claiming an interest in cows owned by Janssen. Boettcher supplied appellant with a letter stating that the Bank had "no lien or encumberances [sic] on cattle owned by HK Ranch," but that "the bank is the secured party on cattle owned by Larry Janssen." Boettcher informed appellant that the Bank had not had any trouble with Janssen. Although he had signed the contract for purchase of the cattle the day before

meeting with Boettcher, appellant stated that he did not consider the deal final at that time.

As it turns out, Janssen had either sold cattle he did not own, or sold the same cows twice. All the cattle bore the same "HK" brand. The cattle owned by the different parties were commingled in different pastures, and there was no effective way to distinguish which cows belonged to which party. The Bank declared Janssen in default on his loans and asserted its lien on all cattle owned by Janssen. The Bank then sued Janssen, appellant, and the other owners seeking a declaratory judgment as to the conflicting claims to the cattle. Appellant counter-sued the Bank, and his claims were severed from the underlying suit when the claims regarding ownership of the cattle were settled.

## THE SUMMARY JUDGMENTS

The Bank first moved for summary judgment "with respect to the claims asserted by the [p]laintiff." The first summary judgment motion discussed only appellant's first, second, and third causes of action. The trial court granted the Bank's motion and entered a judgment which purported to dispose of appellant's entire case, not just his first three causes of action.

The Bank later filed its second summary judgment motion, requesting summary judgment as to the remainder of appellant's causes of action. The trial court granted the Bank's motion, in language identical to that of the earlier judgment. Simultaneously, appellant filed and the court granted a motion for summary judgment *nunc pro tunc* which corrected the first judgment order to reflect that it only granted a partial summary judgment.

## TIMELINESS OF APPEAL

The Bank asks us to dismiss appellant's appeal as untimely, contending the first summary judgment was final and appellant made no attempt to appeal that judgment.

In order to be a final, appealable summary judgment, the order granting the motion must dispose of all parties and all

issues before the court. *Mafrige v. Ross,* 866 S.W.2d 590, 591 (Tex.1993). If the order does not dispose of all issues and all parties, it is interlocutory and not appealable absent a severance. *Id.* If the first summary judgment granted were in fact a final, and thus appealable, order, this appeal would be barred as untimely. The first judgment was not final because it did not dispose of all causes of action, but on its face it purported to do so despite the motion for summary judgment not addressing several claims.

Appellant relies on the rule expressed in *Mafrige,* in which the supreme court held that in an appeal from a summary judgment that purports to be final despite the underlying motion not addressing all parties or causes of action, the appellate court will presume it is final, take jurisdiction, reverse the judgment and remand the cause for trial. However, in the instant case, the first summary judgment was not appealed so the *Mafrige* presumption of finality does not apply. The parties and judge recognized that the first judgment did not dispose of all claims, and thus was not final and complete. That is why the defendant moved for summary judgment a second time, addressing those claims not reached in the first motion. That first judgment was corrected by the summary judgment *nunc pro tunc* to show that it only disposed of appellant's first three causes of action. The Bank's motion for dismissal is overruled.

### STANDARD OF REVIEW

■ We review the record to determine whether the summary judgment proof establishes as a matter of law that there is no genuine issue of material fact as to at least one element essential to the plaintiff's cause of action or whether the defendant has established all the elements of its affirmative defense. *Gibbs v. General Motors Corp.,* 450 S.W.2d 827, 828 (Tex.1970). The Bank had the burden to show that there was no genuine issue of material fact and that it was entitled to judgment as a matter of law. *Nixon v. Mr. Property Management Co.,* 690 S.W.2d 546, 548–49 (Tex.1985). In deciding the motion for summary judgment, all evidence favorable to the non-movant is taken as true, and all reasonable inferences must be indulged in favor of the non-movant. *Id.*

Summary judgment may be granted only on the grounds specified in the motion. *City of Houston v. Clear Creek Basin Auth.,* 589 S.W.2d 671, 677 (Tex.1979).

### APPELLANT'S CLAIMS ON APPEAL

In his two points of error, appellant argues that the trial court erred in granting Union State Bank's motions for summary judgment, in that there were material fact issues as to all causes of action asserted by appellant against the Bank.

■ The summary judgments entered by the trial court do not specify the basis on which they are granted. In reviewing the propriety of a summary judgment that is granted generally, it is incumbent upon appellant to challenge each possible basis of the judgment that was raised in the movant's motion. If each ground is not challenged on appeal, an order that is proper on any ground will be affirmed, and all grounds not challenged are waived. *Mitre v. La Plaza Mall,* 857 S.W.2d 752, 756 (Tex.App.—Corpus Christi 1993, writ denied); *McCrea v. Cubilla Condominium Corp. N.V.,* 685 S.W.2d 755, 757 (Tex.App.—Houston [1st Dist.] 1985, writ ref'd n.r.e.). Summary judgment for the defendant, which disposes of a plaintiff's entire case, is proper only if the defendant establishes that the plaintiff could not succeed on any of the theories pled. *Delgado v. Burns,* 656 S.W.2d 428, 429 (Tex. 1983); *Gibbs v. General Motors Corp.,* 450 S.W.2d 827, 828 (Tex.1970). We therefore examine the summary judgment evidence relating to each of appellant's six causes of action.

### 1. Deceptive Trade Practices

Appellant claimed in his first cause of action that the Bank had "engag[ed] in an unconscionable action or course of action and/or engag[ed] in false, misleading or deceptive acts or practices" by misrepresenting to appellant the ownership status of the cattle and the nature of the Bank's relationship with Janssen. In the Bank's first motion for summary judgment it argued that appellant had already acquired the cattle before he conferred with Mr. Boettcher, and therefore that any misrepresentation could not have

been the cause of appellant's damages. The Bank also argued that appellant was not a "consumer" as required under the DTPA, because he did not seek or acquire any goods or services.

In order to avail himself of the DTPA, appellant must be a "consumer." TEX.BUS. & COM.CODE ANN. § 17.50 (Vernon 1987 and Supp.1995). In order to meet the definition of a consumer, the person must have sought or acquired goods or services by purchase or lease. *Riverside Nat. Bank v. Lewis*, 603 S.W.2d 169, 174 (Tex.1980). We disagree with the Bank's argument that appellant did not seek or acquire any goods or services. Appellant clearly contracted for the purchase of some 400 Red Brahman cows from Larry Janssen. The fact that appellant did not purchase the cattle from the Bank does not destroy appellant's consumer status. As the Texas Supreme Court determined in *Cameron v. Terrell & Garrett, Inc.*,[1] a person need not seek or acquire goods or services from the person sued in order to meet the statutory definition of a consumer. *Cameron*, 618 S.W.2d at 541. "Privity between the plaintiff and defendant is not a consideration in deciding the plaintiff's status as a consumer under the DTPA." *Flenniken v. Longview Bank and Trust Co.*, 661 S.W.2d 705, 707 (Tex.1983).

Appellant established his standing as a consumer because of his relationship to the cattle purchase transaction, not by a contractual relationship with the Bank. *Id.* The fact that appellant was a consumer, however, does not indicate that appellant can then sue *anyone* when the deal goes bad. A defendant must also have a relationship to the transaction, and must seek to enjoy the benefits of that transaction in order to be a proper defendant. *See Flenniken*, 661 S.W.2d at 707; *Knight v. Int'l Harvester Credit Corp.*, 627 S.W.2d 382, 389 (Tex.1982). Although appellant was a consumer, he only held consumer status as to the parties who sought to enjoy the benefits of the cattle sale transaction. *Flenniken*, 661 S.W.2d at 707.

In this case, there is no evidence that the Bank sought to enjoy the benefits of the cattle sale transaction, or that they were in any way involved in the deal. The Bank

did not encourage or discourage the cattle purchase transaction between appellant and Janssen. It appears from the summary judgment evidence that appellant and Janssen negotiated the transaction on their own. Appellant's lawyer drafted the contract for the purchase of the cattle. It was only after the contract had been signed and appellant had learned that the Bank had previously filed a financing statement on Janssen's cattle that appellant went to the Bank. The Bank neither sought nor received any benefit from the transaction between appellant and Janssen. Appellant was therefore not a consumer *as to the Bank. See Knight*, 627 S.W.2d at 389.

The summary judgment evidence showed that appellant was not a consumer as to the Bank. The Bank therefore disproved an essential element of appellant's DTPA cause of action, and summary judgment was properly entered on this point.

## 2. Negligence

Appellant claimed in his second cause of action that the Bank was guilty of negligence "in that it owed a duty to Inglish arising out of its professional status as a banking institution." In order for a cause of action in negligence to lie, the defendant must owe a duty to the plaintiff, the defendant must breach that duty, and the breach must proximately cause the damages suffered by the plaintiff. *Greater Houston Transp. Co. v. Phillips*, 801 S.W.2d 523, 525 (Tex.1990); *El Chico Corp. v. Poole*, 732 S.W.2d 306, 311 (Tex.1987). The threshold question of whether a duty exists in a given situation is a question of law for the court. *Jackson v. Associated Developers of Lubbock*, 581 S.W.2d 208, 212 (Tex.Civ.App.—Amarillo 1979, writ ref'd n.r.e.).

The Bank argued that it had no duty to disclose financial information about Janssen, and that it in fact had a legal duty **not** to disclose such information. The Bank cites specifically to the Texas Banking Code, which states that financial institutions will not

be required to disclose or produce to third parties, or permit third parties to examine

---

1. 618 S.W.2d 535 (Tex.1981).

the amount deposited by any depositor or other records pertaining to the deposits, accounts, loans, or other transactions of a depositor, owner, borrower, or customer....

TEX.REV.CIV.STAT.ANN. art. 342–705 § 1 (Vernon Supp.1995). This provision is subject to several exceptions. Appellant argues that this statute does not apply in this case because Janssen had given his permission for the Bank to release the information when he named Mr. Boettcher as a reference.

The portion of the Texas Banking Code cited above does not apply "if the use or disclosure ... is made with express or implied consent of the depositor or customer." TEX.REV.CIV.STAT.ANN. art. 342–705 § 5(a) (Vernon Supp.1995). Indulging all reasonable inferences in favor of appellant as nonmovant, when Janssen named Mr. Boettcher as a reference for purposes of this cattle transaction, he may have impliedly authorized the Bank to release his financial information. We do not agree with appellant, however, that the Bank had a *duty* to do so.

■ When circumstances impose upon a person a duty to speak and he deliberately remains silent, his silence is equivalent to a false representation. *Spoljaric v. Percival Tours, Inc.*, 708 S.W.2d 432, 435 (Tex.1986). If a party is under a duty to disclose something which he knows may justifiably induce another to act or refrain from acting in a business transaction, he is subject to liability as though he had represented the nonexistence of the matter which he failed to disclose. *Phillips Petroleum Co. v. Daniel Motor Co.*, 149 S.W.2d 979, 987 (Tex.Civ.App.—Eastland 1941, writ dism'd judgm't cor.). Appellant urges that once the Bank made the representation that it had not had any trouble with Janssen, it then had a duty to reveal all information it had on Janssen to appellant. Appellant cites *Int'l Security Life Ins. Co. v. Finck*, 475 S.W.2d 363, 370 (Tex.Civ. App.—Amarillo 1971), *rev'd on other grounds*, 496 S.W.2d 544 (Tex.1973).

■ Appellant's reliance on *Finck* is misplaced. In *Finck*, an insurance salesman on a sales call made certain representations regarding the insurance company, including that they always paid claims promptly. *Finck*, 475 S.W.2d at 366. What the agent did not tell the purchasers was that the insurance company had a reputation for not paying claims on technical grounds and never paying a claim unless the insured filed suit. *Id.* at 367–370. The Amarillo Court of Appeals held that, since the salesman made partial representations concerning the insurance company's reputation in order to make a sale, he acquired a duty to fully inform the potential purchasers of the company's reputation. *Id.* at 370.

> The agent, under the circumstances, was under no duty to disclose that reputation, but when he chose to state, *in order to induce the sale,* that appellant always paid claims promptly, that misrepresentation was the converse of the actual reputation. Therefore, we hold here that when the agent undertook to speak at all, it became his duty to speak the truth, and the concealment or suppression of the truth of appellant's reputation, when coupled with the actual misrepresentation to the contrary, was sufficient to amount to active conduct supporting the submission of, and the finding in response to, special issue 3B.

*Id.* (emphasis added). The *Finck* case is distinguishable from the case at bar in that the insurance salesman made representations concerning the insurance company *in an attempt to sell an insurance policy.* When he began giving information about the insurance company in order to induce the plaintiffs to purchase the insurance policy, he took on a duty to reveal *all* relevant information about the company. He effectively created the duty to speak by revealing the information *in order to persuade the plaintiffs to buy the policy.* In the present case, there is no evidence that the Bank was trying to induce appellant to purchase the cattle from Janssen. Boettcher was responding to an inquiry from appellant regarding the Bank's security interest in Janssen's cattle and regarding the Bank's prior relationship with Janssen. While we agree, therefore, that a party with a duty to disclose information may not keep silent, we hold that the Bank had no duty to reveal Janssen's financial information to appellant.[2]

---

**2.** This is especially true in that appellant never asked for specific financial information concern-

While Janssen named Boettcher as a reference, there is no indication that he instructed Boettcher to reveal all financial information available to the Bank regarding his accounts. Appellant asked Mr. Boettcher about the Bank's security position and about Janssen's relationship with the Bank. The Bank in turn provided appellant with a letter describing its security position and informed appellant that it did not have any problems with Janssen. Neither of these actions by the Bank implicates a larger duty to disclose Janssen's financial information to appellant. Summary judgment was properly granted on this cause of action.

### 3. Fraud/Negligent Misrepresentation

Appellant claimed in his third cause of action that the Bank was guilty of fraud and/or negligent misrepresentation when it stated that it had had no problems with Janssen.

■■■■ In order to uphold a summary judgment on fraud, the movant has the burden of proving that there are no material issues of fact on at least one element of a cause of action for fraud. *Delgado v. Burns,* 656 S.W.2d 428, 429 (Tex.1983). The elements of actionable fraud are (1) that a material misrepresentation was made, (2) that it was false, (3) that, when the speaker made it, he knew it was false or made it recklessly without any knowledge of its truth and as a positive assertion, (4) that the representation was made with the intention that it should be acted upon by the party, (5) that the party acted in reliance on it, and (6) that the party thereby suffered injury. *Trenholm v. Ratcliff,* 646 S.W.2d 927, 930 (Tex.1983).

■■■■ The Bank asserted in its motion for summary judgment that appellant had shown no evidence of a misrepresentation. We agree. Appellant's deposition testimony attached to the motion for summary judgment reveals that appellant asked Boettcher about the HK Ranch and Janssen because Janssen had told him to go to Boettcher as a reference. While appellant was at the Bank, Boettcher prepared a letter for him stating that the Bank did not have a lien on the cattle of HK Ranch, but did have a security interest on Janssen's cattle. Appellant stated that Boettcher told him that "everything with Larry Janssen had turned out very good with him up till that date." Appellant also stated that he understood that the term "d/b/a" means "doing business as,"[3] and that, even though the cows bore the "HK" brand, they could easily have been owned by Janssen.

From the summary judgment evidence available to the trial court, the Bank made no material misrepresentations to appellant. Appellant inquired about the Bank's security position on the cattle, and the Bank informed him truthfully that they had a lien on cattle owned by Larry Janssen. The Bank also informed appellant that everything had turned out well with Janssen up until the time that appellant inquired about him.[4] There is nothing to indicate that appellant made anything more than a general inquiry into the Bank's relationship with Janssen. Nothing indicates that Boettcher's statement that everything was "fine" with Janssen was a misrepresentation. There being no showing of a misrepresentation, summary judg-

---

ing Janssen. The summary judgment evidence shows that appellant went to the Bank in order to determine the Bank's lien position, as well as to check the reference given him by Janssen. The Bank provided appellant with a letter describing the Bank's secured position with regard to cattle owned by Janssen. Mr. Boettcher also apparently told appellant that the Bank had no problems with Janssen as a customer. We do not believe that this sort of inquiry into the Bank's security position with regard to cattle owned by Janssen implicated the statute discussed above with regard to the release of a bank customer's financial information.

**3.** The contract for purchase of the cattle referred to the seller as "Larry Janssen d/b/a HK Ranch."

This contract was prepared by appellant's attorney.

**4.** Appellant testified in his deposition about hearsay information concerning two large checks written by Janssen that had "bounced" prior to the time that appellant spoke with Boettcher. Appellant asserts that this information shows that the Bank made a misrepresentation when it told him that everything with Janssen had turned out fine. Without any information regarding the final disposition of the returned checks, however, it is impossible to conclude that Boettcher lied when he informed appellant that there was no problem with Janssen.

ment was properly granted on appellant's cause of action for fraud.

■ Appellant sued in the alternative for negligent misrepresentation. To prevail in such an action, the plaintiff must prove that: (1) the defendant made the representation in the course of its business or in a transaction in which it has a pecuniary interest; (2) the defendant supplied false information for the guidance of others in their business; (3) the defendant did not exercise reasonable care or competence in obtaining or communicating the information; and (4) the plaintiff suffered pecuniary loss by justifiably relying on the representation. *First Interstate Bank v. S.B.F.I., Inc.,* 830 S.W.2d 239, 245 (Tex. App.—Dallas 1992, no writ); *Cook Consultants, Inc. v. Larson,* 700 S.W.2d 231, 234 (Tex.App.—Dallas 1985, writ ref'd n.r.e.) (quoting RESTATEMENT (SECOND) OF TORTS § 552(1) (1977)).

■ As discussed above, the summary judgment evidence reveals that the Bank did not make a material misrepresentation to appellant. Thus the second element of a suit for negligent misrepresentation is missing. Summary judgment was proper on this cause of action.

## 4. Breach of Contract

In appellant's fourth cause of action, he alleged that

[t]he Bank induced Inglish to enter into an agreement to voluntarily restrain from disposing of any cattle until a time when one of the terms of until a time when ownership could be determined with requiring Ingish [sic] to expend money on an attorneys fee. The agreement should be considered contractual and the Bank has breached that contract by filing suit.

We gather from this garbled statement that appellant is arguing that the "Agreed Temporary Injunction" entered into by the various parties who were disputing ownership of the cattle created a contractual duty not to file suit to determine each party's rights.

The Bank argued in its second motion for summary judgment that this claim was barred by judicial estoppel. Specifically, the Bank argued that because appellant consented to the terms of the injunction in the underlying declaratory judgment lawsuit, he cannot now complain about that injunction. We agree.

■ The doctrine of judicial estoppel bars a party, who has successfully maintained a position in a prior judicial proceeding, from later adopting an inconsistent position, unless that party can show the prior statement was made inadvertently due to mistake, fraud, or duress. *Owen v. Knop,* 853 S.W.2d 638, 641 (Tex.App.—Corpus Christi 1993, writ denied). One may not assert a position contrary to that alleged or admitted under oath in a former proceeding. *Long v. Knox,* 155 Tex. 581, 291 S.W.2d 292, 295 (1956); *Izaguirre v. Texas Employers' Ins. Ass'n,* 749 S.W.2d 550, 555 (Tex.App.—Corpus Christi 1988, writ denied).

■ The injunction was signed on October 15, 1991. The Bank filed its original suit seeking declaratory judgment several weeks earlier, on September 27, 1991. The injunction, to which appellant expressly agreed, recognized that "[a] bona fide dispute exists between the parties as to the ownership of the cattle." It was also stipulated in the injunction that "this Agreed Order shall not be deemed for any purpose a waiver of any cause of action, claim or defense and that this agreed order shall not be admitted as evidence at trial on the merits."

The injunction enjoined the parties from doing several things, including "selling, further mortgaging, encumbering, transporting or otherwise dealing with" the cattle. The parties were also directed to preserve the cattle in their possession and maintain applicable records concerning the cattle until final judgment was entered.

Nothing in the injunction enjoins a party from filing suit to determine their rights in the cattle. In fact, the injunction recognizes that there are outstanding disputes as to the ownership interests in the cattle, and seeks merely to preserve the herd until such time as those disputes could be resolved.

Appellant's argument that the Bank's suit seeking declaratory judgment somehow breached a contractual agreement in this temporary injunction is without merit. The Bank's suit had been filed before the injunction was ordered. Nothing in the injunction

supports the contention that it somehow barred prosecution of the suit. Summary judgment was proper on this cause of action.

## 5. Wrongful Sequestration/Abuse of Process/Malicious Prosecution

 In appellant's fifth cause of action he claimed that:

The Bank is guilty of wrongful sequestration, abuse of process and malicious prosecution in seeking and obtaining a temporary restraining order and injunction against the Plaintiff Inglish.

The Bank urged in its second motion for summary judgment that this claim was barred by judicial estoppel. We agree. As discussed above, having agreed to the injunction and successfully sought strict enforcement of the terms of that injunction, appellant should not now be heard to complain about that same injunction.

One may not assert a position contrary to that alleged or admitted under oath in a former proceeding. *Long,* 291 S.W.2d at 295. Appellant signed the "Agreed Temporary Injunction," agreeing to it both in form and in substance. As a party to the injunction, appellant stipulated that the Bank would probably prevail at trial with a money judgment against Janssen, that a bona fide dispute existed as to the ownership of and security interests in the cattle, and that "[i]t is necessary to maintain the status quo of the herd and to enjoin the sale, transfer or any other dissipation of the herd if an effective final judgment is to be rendered by this Court." Having agreed to the necessity of protecting the cattle while the ownership interests were resolved, appellant should not also be heard to argue that the sequestration and protection of said cattle was somehow wrongful. Additionally, when the Bank attempted to sell some of the cattle, appellant successfully argued that the necessity of maintaining the status quo of the herd had not changed and therefore that the injunction should be enforced. Summary judgment was properly granted for the Bank on this cause of action.

5. TEX.CIV.PRAC. & REM.CODE ANN. § 37.001 et seq.

## 6. Tortious Interference with Contract

Appellant claimed in his sixth cause of action that:

The Bank had previously agreed and had a course of conduct indicating that Janssen was free to sell any animal at any price determined by him to be appropriate without prior permission of the Bank. The Bank tortiously interfered with the contract made between Inglish and Janssen. . . .

The Bank argued in its second motion for summary judgment that this claim was barred by judicial estoppel, compulsory counterclaim, and because, as a matter of law, "the mere filing of a lawsuit cannot constitute . . . a tortious interference with a contract." The Bank cites generally to the Texas Uniform Declaratory Judgments Act [5] for this last proposition.

 The elements of a cause of action for tortious interference with a contract are: (1) the existence of a contract subject to interference, (2) the occurrence of an act of interference that was willful and intentional, (3) the act was a proximate cause of the plaintiff's damage, and (4) actual damage or loss occurred. *Browning–Ferris Inc. v. Reyna,* 865 S.W.2d 925, 926 (Tex.1993); *Victoria Bank & Trust Co. v. Brady,* 811 S.W.2d 931, 939 (Tex.1991).

 In the agreed injunction, appellant stipulated to the fact that a bona fide dispute existed as to the ownership of the cattle. Additionally, appellant stopped the Bank from selling any of the cattle in violation of the injunction. Appellant thereby recognized the enforceability of the injunction, and that the Bank had a bona fide reason to dispute his ownership of the cattle. Clearly, the Bank sought only to protect itself from loss by asserting its lien on the cattle when Janssen defaulted on his loans. By stipulating to the bona fide nature of the dispute as to ownership of the cattle, appellant effectively admitted that the Bank had not willfully and intentionally interfered with the contract between Janssen and himself. Under the doctrine of judicial estoppel, appellant should not be heard to complain that the Bank's actions

(Vernon 1986 and Supp.1995).

 

amounted to tortious interference with a contract. Summary judgment was properly granted on this cause of action.

Having determined that summary judgment was properly granted on each of appellant's six causes of action below, we AFFIRM the judgment of the trial court.